S. W. QUALLS, Plaintiff in Error, v. CITY OF MEMPHIS, Defendant in Error.

Western Section.   July 13, 1932.

Petition for Certiorari denied by Supreme Court, February 11, 1933.

576

Charles M. Bryan and Charles L. Glascock, both of Memphis, for plaintiff in error.

Walter Chandler and A. L. Heiskell, for defendant in error.

SENTER, J.  This suit arose by reason of a denial by the Building Commissioner of the City of Memphis to issue to S. W. Qualls a permit to operate a funeral home at 481 Vance Avenue, Memphis, Tennessee. The particular location under the zoning laws and ordinances of the city of Memphis is designated as "Commercial C." From the action of the Building Commissioner the petitioner Qualls appealed to the Board of Adjustment of the city of Memphis, where the questions in controversy were tried before said Board of Adjustment, which is the appellate board created by the special statute or charter of the city of Memphis to review the action of the Building Commissioner to whom all requests for permits under the zoning ordinance and laws of the city of Memphis is first presented. Upon a full trial and hearing on oral evidence introduced before the Board of Adjustment, the appeal of petitioner Qualls was overruled and the holding of the Building Commissioner was affirmed. Certiorari was filed by petitioner Qualls to the Circuit Court of Shelby County, where the matter was there heard before the trial judge, without a jury, and upon the transcript of the evidence and the proceedings had before the Board of Adjustment, no new evidence being introduced or heard. The petition for certiorari upon a hearing thereof, was dismissed. A motion for a new trial was made by petitioner Qualls, which motion was overruled, and from the action of the court in overruling the motion for a new trial and in denying the petition for certiorari and affirming the Board of Adjustment, the petitioner Qualls prayed and was granted an appeal to this court in the nature of a writ of error, and has assigned errors.

It appears that S. W. Qualls, now and at the time the application for a permit was filed, operated a funeral home for colored people on Wellington Street, on a lot the rear end of which ran back to the lot 481 Vance Avenue. Qualls had purchased a large stone residence on Vance Avenue, and desired to convert the same into a funeral home for colored people, and to build therein a chapel where funerals would be conducted, and also to prepare bodies for burial by embalming, and to use all the first floor of said building as the funeral home and

undertaking establishment, and to occupy the second floor of said building as a family residence. It appears that while this particular portion of Vance Avenue is designated in the zoning ordinance of the city of Memphis as "C Commercial," it is a residential district where white families reside, and probably some stores in the immediate vicinity. When the application was made by Qualls to the Building Commissioner for the permit to so use said building, the permit was denied by the Building Commissioner, and from the action of the Building Commissioner Qualls appealed to the Board of Adjustment. This is the procedure provided by the laws and ordinances of Memphis.

Numerous witnesses testified before the Board of Adjustment. Several of the property owners residing within the block and immediate vicinity of the building, protested against the permit being granted to petitioner Qualls to so use the building, claiming that it would constitute a nuisance, and was not such a building and use of which as would be permissible under all the facts and circumstances surrounding its location, considering the width of the street, the narrowness of the lot and the close proximity to residences on both sides of this building, and the use of the same for embalming bodies and preparing bodies for burial, and the use of a funeral chapel where funerals would be conducted for colored people, and the resultant noises, odors and traffic congestion that would essentially follow the use of the premises for said purposes. Witnesses for the petitioner Qualls testified that he was recognized as among the leading colored undertakers in the city of Memphis, and that the funerals conducted by him and the operation of his funeral home on Wellington Street within a short distance of the proposed funeral home, were orderly conducted and operated, and did not constitute a nuisance. These witnesses also testified in substance and to the effect that the proposed funeral home on Vance Avenue would not operate to interfere with the comfort and convenience of residents in the block and vicinity. Upon the evidence presented the Board of Adjustment, and in denying the application of petitioner Qualls, the Board of Adjustment unanimously disposed of the matter by the following resolution, which appears of record on the minutes of said Board of January 8, 1931.

"APPELLANT—S. W. Qualls.

"SUBJECT—Appeal from the decision of the Commissioner of Public Utilities Grounds and Buildings in rejecting occupany permit to use premises in 'C' Commercial District as a funeral home and mortuary chapel including sales and show room, on the ground specified in the typewritten statement filed herein.

"PREMISES AFFECTED—481 Vance Avenue.

"APPEARANCES—A. public hearing having been held on this case by the Board on Monday, December 29, 1930, at which time the Board took the case under advisement, no public hearing was held on the case at this meeting.

"ACTION OF BOARD—Appeal denied and decision of the Commissioner of Public Utilities, Grounds and Buildings affirmed.

"THE RESOLUTION:

"Whereas, on December 4, 1930, S. W. Qualls & Co., made application to the Hon. Sam Jackson, Commissioner of Public Utilities, Grounds and Buildings for a use and occupancy certificate for permission to occupy the premises at 481 Vance Avenue, Memphis, Tennessee, as a funeral home, and

"Whereas, said application was rejected by said Commissioner,

"Whereas, S. W. Qualls appealed the said decision on said day to the Board of Adjustment of the City of Memphis, and

"Whereas, said Board heard said appeal at a special meeting, held on Monday, December 29, 1930, on the record filed by said S. W. Qualls, its records and maps on file in its offices, and the testimony of witnesses duly sworn.

"The said Board of Adjustment does now adjudge and find the following facts:

"The premises at 481 Vance Avenue, Memphis, Tennessee, is a two-story dwelling house on south side of Vance Avenue, next east to the dwelling house situated at the southeast corner of Vance Avenue and Wellington Street; that the lots on both sides of Vance Avenue eastwardly toward Lauderdale Street, have erected on them dwelling houses (with very few exceptions) used as dwelling houses for white persons. The character of the neighborhood is predominantly that of residence use for members of the Caucasian race.

"The lot in question fronts 57.5 feet on Vance Avenue, and is 150 feet deep, extending southwardly to a 15 foot public alley. Vance Avenue, before the widening, was 60 feet wide between property lines, but is now being widened nine feet, 4½ feet on the north and south sides of said street.

"The lot at the southeast corner of Vance Avenue and Wellington Street is 60 feet wide, and 150 feet deep and runs southwardly from Vance Avenue to the public alley aforesaid.

"The lot immediately east of the Qualls property fronts 50 feet on Vance Avenue and extends southwardly to said public alley.

"It is approximately 4 feet from the west side of the Qualls building to the property line of the lot west thereof.

"It is approximately 10 feet from the west side of the Qualls building to the house west of it.

"It is approximately 12 feet from the east line of the Qualls building to the east line of his lot.

"The back yard of the Qualls property is 32 feet extending southwardly to the alley.

"The set-back before the widening of Vance Avenue was 35 feet.

"S. W. Qualls & Company are funeral directors and conduct a business as such at 360 Wellington Street, which is in the rear and to the west of the lot in question.

"According to his application he proposes to use the lower floor and basement of the premises at 481 Vance Avenue as a mortuary and funeral home for members of the colored race in which bodies will be received and prepared for burial, and from which funerals will be conducted. The upper floor of the two-story stone veneer and frame house will be used by S. W. Qualls for dwelling house purposes.

"The premises are in 'C' Commercial use zone, from which is excluded by paragraph 18 of Section 5 of the zoning ordinance passed November 7, 1922, 'those uses which have been declared a nuisance in any court of record, or which may be obnoxious, or offensive by reason of the emission of odor, dust, smoke, gas, or noise.'

"S. W. Qualls is a member of the colored race and does exclusively an undertaking and mortuary business for members of the colored race.

"In view of the small dimensions of the lot, and the narrow distances between the house at 481 Vance Avenue and the adjoining house to the west and the narrow distance to the lot east, the Board is of the opinion and finds, that the use of the premises at 481 Vance Avenue as a funeral home and mortuary, whether for the white or colored race, will be obnoxious and offensive by reason of the emission of odors and noises within the meaning of the Zoning Ordinance.

"While the Board is of the opinion and finds, that it cannot and will not discriminate against said S. W. Qualls, because he is a member of the colored race, or because he intends to conduct a funeral home on the premises for colored persons, yet the Board finds, from the proof, that members of the colored race are very emotional, and that funerals of members of that race are attended by loud speaking, singing, moaning, and other

sounds which would be obnoxious and offensive to persons in the immediate neighborhood, especially the persons living in the houses immediately to the east or west of the premises in question. And the Board finds that the premises are unsuitable for use as a funeral home or mortuary, and would constitute a nuisance within the law, no matter how prudently, carefully and scientifically the business would be conducted.

"The Board further finds that due to the narrow dimensions of the lot, and its situation on Vance Avenue that a traffic congestion would necessarily follow from the use of the premises as a funeral home.

"It is, therefore, resolved, by the Board of Adjustment of the City of Memphis, that the action of the Commissioner of Public Utilities, Grounds and Buildings, in denying said application of S. W. Qualls for a use and occupancy permit of the premises at 481 Vance Avenue, Memphis, Tennessee, as a funeral home, be and the same is hereby approved and affirmed, and the appeal of said S. W. Qualls from the decision of said Commissioner is hereby disallowed and overruled."

The Board of Adjustment of the City of Memphis is vested with the duty and power and authority to review the actions of the Commissioner of Public Utilities, Grounds and Buildings of the City of Memphis, under the laws and ordinances of the city of Memphis, where an appeal is taken from the action of said Commissioner. The Board of Adjustment is composed of seven members, and the minutes show that all seven were present and voted for the above resolution, which sets forth the finding of the facts and the action and judgment of said Board of Adjustment is disposing of said appeal.

From the above holding and action of the Board of Adjustment, petitioner Qualls filed a petition for certiorari to the Circuit Court of Shelby County, making the City of Memphis a defendant thereto. The City of Memphis filed its answer and motion to dismiss the petition for certiorari and to affirm the decision and judgment of the Board of Adjustment. The entire record of the evidence heard before the Board of Adjustment was introduced and presented before the Circuit Judge at the hearing. No additional evidence was offered or heard before the Circuit Judge, and upon the hearing on the record the trial judge dismissed the petition and adjudged the costs against petitioner Qualls and surety on the bond. A motion for a new trial was overruled and disallowed, and the appeal to this court prayed and granted, and errors assigned. By the several assignments of error, it is contended by appellant that the trial judge erred, (1) in failing and refusing to set aside its judgment dismissing the petition for certiorari. and in holding that the Board of Adjustment had not acted in a

manner that was arbitrary, unreasonable, capricious and illegal; (2) that the court erred in failing and refusing to set aside the finding of the Board of adjustment and issue a permit because (a) that said finding was illegal because it appeared that the Board had acted beyond and transcended its authority as conferred upon it by the ordinances of the City of Memphis, and said Board had no authority except such as was conferred upon it by the city ordinances of the city of Memphis; and (b) the Board found that the proposed business of the petitioner would constitute a nuisance, a fact which could not be determined in advance of the operation of the business; and (c) because it is shown by the evidence that the whole action of the Board was based upon the idea that it had a right to determine what constituted nuisances, when the ordinance under which they acted defined the particular matters which should be held objectionable. (3) The Court erred in failing to hold the action of the Board of Adjustment arbitrary and illegal and unconstitutional as a violation of the Fourteenth Amendment to the Constitution of the United States, and deprived the petitioner Qualls of his property without due process of law in violation of the Consitution of the United States. (4) Because the holding of the Circuit Court that the Board of Adjustment did not act arbitrarily, capriciously, illegally and in a discriminatory manner is contrary to the great weight of the evidence; and (5) because there is no evidence to support the finding of the Circuit Court to the effect that the action of the Board of Adjustment was not arbitrary, capricious, illegal and discriminatory; and (6) that the court erred in holding that the action of the Board of Adjustment in denying the permit to the petitioner was not illegal and in direct violation of the zoning ordinances of the city of Memphis, passed November 7, 1922, and as amended March 1, 1929, for the reason that no ground for refusal as set out in said ordinance appears in the proof to have existed as to the business of the petitioner; and (7) that the court erred in failing to grant the permit to petitioner and in failing to overrule the Board of Adjustment for the reason that if the city ordinances of the City of Memphis deny to the petitioner the right to use his particular property by declaring it a nuisance in advance, such ordinances are unconstitutional and void and violative of the Fourteenth Amendment to the Constitution of the United States.

These several assignments of error present the questions made on this appeal. Appellant, in the brief filed, laid great stress upon the theory that this permit was denied to Qualls on the ground that Qualls conducted and proposed to conduct a funeral home for colored people, and was therefore discriminatory, and in violation of the Fourteenth Amendment to the Federal Constitution. The finding

of the facts by the Board of Adjustment in no way places or bases its action upon the fact that Qualls is a colored undertaker and was proposing to operate a funeral home for colored people on the premises in question. To the contrary, the opinion of the Board of Adjustment expressly recognizes that it could not discriminate against a colored funeral home, or base its action upon the fact that this is a colored funeral home, although it does refer to the evidence contained in the record as to the emotional nature and customs of colored people on funeral occasions. The Board of Adjustment seems to rest its action upon the general environment, circumstances, and situation of this particular place and locality, including the small size of the lot, the close proximity of the homes of residents to the proposed funeral home, the narrow street, and the discomforts that would result to those residing in the immediate vicinity, and which would necessarily result from the operation of a funeral home, a funeral chapel, and the embalming of dead bodies, and the attendant noises and confusion that goes with funerals, even though they are conducted in the most orderly, skilled and scientific manner.

By the provisions of Chapter 162 of the Private Acts of 1921, a City Planning Commission was created, and by the same Act the City of Memphis was authorized to establish zoning districts within its corporate limits for the purpose of better regulating the use of streets, sections and districts of the city, and the better controlling of the population of the city, and to the general end that congestion upon the public streets may be lessened, the public health, safety, convenience, and general welfare promoted. Under the authority of that Act the city of Memphis by proper ordinances, laid off the City of Memphis into zones. The entire machinery for carrying out the purposes of the Act was provided by ordinances, and the entire procedure for securing building permits is also provided, and by Section 18 it is provided for the issuance of Certificates of Occupancy and the use of buildings or premises, by an application by the owner or proposed operator or builder made to the Commissioner of Public Utilities, Grounds and Buildings. There is provided by Section 17 of the Ordinance a Board of Adjustment to consist of seven members, and Secretary to the Board. Among other duties vested in the Board of Adjustment is that of reviewing on appeal by any person aggrieved by the action of the Commissioner of Public Utilities, Grounds and Buildings. Broad discretionary powers are vested in the Board of Adjustment in all matters pertaining to the granting or the refusal to grant applications for permits for the use of premises and buildings within the city limits. By sub-section 7 of Section 17 it is specifically provided as follows:

"Interpret the provisions of this ordinance in such a way as to carry out the intent and purpose of the plan, as shown upon the maps fixing the several districts accompanying and made a part of this ordinance, where the street lay-out actually on the ground varies from the street lay-out as shown on the maps aforesaid."

By sub-section 8 the further duties of the Board of Adjustment is stated as follows:

"Interpret the provisions of this ordinance in harmony with their fundamental purpose and intent where practical difficulties or unnecessary hardships occur."

The jurisdiction of the Board of Adjustment on all appeals to it is provided by the Private Acts of 1925, Chapter 606, and other amendatory Acts.

We think it clear from the Acts of the legislature authorizing the zoning of the City of Memphis, and the creation of the machinery to carry into effect the purposes of the Act, and also from the ordinances of the City of Memphis, that the Board of Adjustment in its administrative capacity, is vested with the authority and duty of interpreting the various sections of the zoning ordinance, and is given a broad discretionary power in the matter of determining the questions that come before the Board for Adjustment. In fact, as the term implies, it is an adjustment board, created for the purpose of adjusting differences that may from time to time arise between the Commissioner of Public Utilities, Grounds and Buildings, or other officials charged with duties under the zoning ordinance, and citizens or property owners, or those desiring to use property and premises in the City of Memphis for certain purposes. It would be difficult, indeed, to draft an ordinance and create zones to meet every conceivable condition that may arise in the use of streets and property in a populous city. The zoning ordinance seeks to provide by different zones a division of the city into districts. In so doing, six districts are provided, designated as follows: "A" Residence District, "B" Residence District, "B-1" Apartment—Shop District, "C" Commercial District, "D" Industrial District, "E" Unrestricted District.

"C" Commercial District as provided by Section 5 of the Ordinance, sets out that all buildings and premises, except as otherwise provided, may be used for any use permitted in the "B" residence district or for any other use except seventeen specified purposes or businesses, and Section "D" provides for the use for all purposes permitted by "C" Commercial, and all other business except a schedule of sixty-six different operations, and Item 67 provides as follows:

"And in general those uses which have been declared a nuisance in any court of record or which may be obnoxious or offensive by reason of the emission of odor, dust, smoke, gas or noise."

The Board of Adjustment rested its action especially on this Item 67, and also the authority vested in it to interpret the ordinance so as to have it conform to the uses and purposes for which the zoning law was intended, and the interest and protection that the zoning laws and ordinances are intended to subserve.

Appellee contends that the findings and action of the Board of Adjustment is conclusive, except where the action is for reasons illegal, and improperly exercised by the Board. Under this contention it is insisted that in Tennessee there has been some confusion arising from the fact that we have both the common law writ of certiorari and the statutory writ, which is different in its nature, operation and effects, and that it is now definitely settled that in matters of this nature the action of the Board of Adjustment is final, and the Circuit Court will not substitute its judgment for that of the Board, but can only investigate the matters to the extent of ascertaining whether or not the Board of Adjustment acted legally and within its powers.

This was the view taken by this court in the comparatively recent case of McPhillips v. City of Memphis, opinion filed July 30, 1929. and in which case this court construed the zoning laws and ordinances of the City of Memphis, and wherein this court said:

"It is a well settled principle of law that the courts will not substitute their judgment for the judgment of a Board or Commission vested with discretionary powers, unless the action complained of was fraudulent or illegal."

In support of the holding in that case this court cited among other authorities the case of Necktow v. Cambridge, 227 U. S., 183; Fourcase v. City, 238 Pac., 934 (Cal.); People v. Walsh, 209 N. Y. Supp., 454, 212 App. Div., 635.

This court further said in that case:

"We are of the opinion that the trial judge was not in error in refusing the petitioners a trial de novo under the terms of Chapter 428 of the Private Acts of 1925. That upon the petition of the plaintiff and the record as made by the Board of Adjustment there was no illegality in the decision of the Board of Adjustment. They had a right to act upon the facts which they heard and found after a full and complete hearing of the matters in controversy, and for the trial judge to reopen the case and grant the petitioner a trial de novo, the trial judge would have been substituting his judgment for that of the Board of

Adjustment which was created expressly for the purpose of hearing and determining the identical matter it did adjudge and adjudicate.''

It is contended by appellant under the assignments of error that the Board of Adjustment acted illegally and arbitrarily and in violation of the rights of petitioner Qualls as guaranteed to him under the Fourteenth Amendment to the Constitution of the United States. It is further contended by appellant that the Board of Adjustment, by its judgment, exceeded its authority by putting in an exception under "C" Commercial District that the ordinance did not provide, since funeral homes are not included in the exception to which uses of property may be made. It is true that the ordinance does not specifically state and include that a funeral home cannot be operated within this district. But Item 67 of Section 6 under the heading of "D" Industrial, makes general provision where the particular business or use is not specified as an exception, and it was under this item, 67, that the Board of Adjustment rested its decision, and exercised its discretion in applying said Item 67 to this particular case or matter.

The Circuit Court will not substitute its judgment on the facts for the judgment of the Board of Adjustment, or invade the province of the Board of Adjustment. The Board of Adjustment, in the resolution hereinbefore quoted, set out the facts as found by the Board and based the finding of facts upon the evidence of witnesses heard before the Board.

It is also urged by the appellant that the Board of Adjustment wrongfully and illegally held that a funeral home, properly conducted, constitutes a nuisance per se. We do not so understand the holding of the Board of Adjustment. We think the Board of Adjustment recognized that a funeral home where properly conducted does not constitute a nuisance per se, but the Board did hold that under all the facts and circumstances as disclosed by the record, and the evidence of witnesses, that because of the small size of the lot, and the narrow street, and the general environment, that the operation of the proposed mortuary and funeral home and funeral chapel, would create a situation and condition of discomfort and great inconvenience, and would damage property values, however carefully, orderly, and scientifically the business may be operated.

As to what constitutes a nuisance must essentially depend upon all the facts and circumstances and the peculiar environment. If this lot was sufficiently large so as not to be in too near proximity to the adjoining residences and if the street was broader so as not to occasion unusual traffic congestion, it would present a very different question, and probably would not be a nuisance per se. It is ad-

mitted that the street is narrow, the lot is small, and it also appears that certain unpleasant odors are emitted in the process of embalming and taking care of bodies, and to place such an institution within eight or ten feet of a residence occupied by people of esthetic taste, it certainly could not be said that a condition of discomfort and inconvenience would not essentially result.

Much has been said by able counsel, both in his argument at the Bar of this Court, and in the brief filed in support of the assignments of error, that the action of the Board of Adjustment in refusing this permit was in reality based upon the fact that this is a funeral home for colored people, and is an invasion of a white residential community. This record does not disclose that the Board of Adjustment rested its action upon any such theory. It is true that the opinion does refer to certain conditions that usually accompany colored funerals, but the opinion specifically disclaims any purpose to discriminate against the colored race, and specifically states that it was actuated by no such motive.

We do not think that the action of the Board of Adjustment violates any rights guaranteed to appellant by the Fourteenth Amendment to the Constitution of the United States. He purchased this property with full knowledge that it was in a residential district, and occupied as homes by white people, and he must have known that a funeral home conducted in this building within a very few feet, eight or ten feet, of homes occupied by families, would be very objectionable and very distasteful.

We do not think that the action of the Board of Adjustment was in any sense the taking of property without due process of law. We are of the opinion that it was a matter that addressed itself to the sound discretion of this legally and lawfully constituted and created Board charged with grave duties and responsibilities to the citizens of a populous city, and that the Board was acting within its authority in determining the issues submitted to it, and that there are material facts shown by the evidence to support the conclusion reached by this Board. In this situation we do not think that the Courts have the right to substitute its judgment for the judgment of this Board of Adjustment, that acts in this important governmental capacity.

It results that the assignments of error are overruled, and the judgment of the lower court is affirmed.

The appellant and surety on the appeal bond will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.