## CITY OF MEMPHIS v. QUALLS.

Western Section. March 24, 1933.

Judgment Affirmed by Supreme Court, October, 1933.

Walter Chandler and A. L. Heiskell, both of Memphis, for plaintiff in error.

Chas. M. Bryan, of Memphis, for defendant in error.

SENTER, J. The petitioner, S. W. Qualls, filed an application with the building commissioner of the city of Memphis for a permit to use certain property at 479 Vance avenue, which he owned, for the following purposes: ". . . To occupy downstairs as sales room and display room, office and workroom. No funerals to be conducted therefrom. No vehicles to carry bodies in or out or to enter from Vance Avenue with bodies."

This permit was denied by the building commissioner, and from the action of the building commissioner petitioner appealed to the board of adjustment of the city of Memphis, and, upon appeal, the application was heard by the board of adjustment, upon the application and the oral evidence of numerous witnesses. The board of adjustment, upon a full hearing, sustained the action of the building commissioner and denied the permit. Whereupon, the petitioner, Qualls, took the

matter to the circuit court of Shelby county on a petition for certiorari, where the matter was heard by the trial judge without the intervention of a jury. This trial resulted in a reversal of the action of the board of adjustment. The trial judge held that petitioner was entitled to have the writ of occupation as applied for granted to him. A motion for a new trial was overruled, and the matter is now before this court on appeal prayed and granted from the action of the court in reversing the holding and action of the board of adjustment and in granting the writ of occupancy to petitioner to occupy the premises in question for the purposes as set forth in the application. Numerous errors have been assigned by appellant, the city of Memphis.

Prior to the present proceedings the same petitioner, Qualls, who had acquired ownership of the stone residence on Vance avenue in Memphis, being the same premises involved in the present matter, desired to use the lower floor of the building as an undertaking establishment and funeral home for colored people, and filed his application with the building commissioner as required by the laws and ordinances of the city of Memphis, and his application was denied. On appeal to the board of adjustment, upon a full hearing of the application and the evidence of witnesses, the board of adjustment sustained the action of the building commissioner, and denied the application to use the premises for the purpose of conducting a funeral home and undertaking establishment as set forth in the application. On certiorari to the circuit court, the learned trial judge affirmed the action of the board of adjustment, and denied the granting of the application for the writ of occupancy. An appeal was prayed and granted by Qualls to this court, and errors assigned. This court, in an opinion filed (15 Tenn. App., 575), affirmed the action of the trial judge, and petition for certiorari to the Supreme Court was denied. Whereupon, Qualls instituted a new proceedings by filing a new application with the building commissioner of the city of Memphis, and in which he sets forth that he now desires to use the premises in question only for the purposes as set forth in the portion of the application hereinbefore quoted, viz., as the salesroom and showroom for the sale of caskets, and not for the purpose of using the premises as a funeral home or mortuary in which bodies would be prepared for burial or funerals conducted; and no dead bodies to be taken into the building or out of the building, and the second floor to be used by Qualls as the family residence. It will thus be seen that the purpose or use to which Qualls now seeks to occupy the premises is limited to using the first floor of the building as a display and salesroom for caskets and a work room, and not for the preparation of bodies for burial and not for the holding of funeral services in the building. The building commissioner denied this application to Qualls, and he appealed to the board of adjust-

ment. The board of adjustment upon a full hearing and upon the evidence of the numerous witnesses heard at the hearing, sustained the action of the building commissioner and denied the application of Qualls to use and occupy the premises for the purposes set forth in the application, and, as before stated, the matter was taken to the circuit court and heard before the trial judge without a jury, resulting in the trial judge reversing the action of the board of adjustment and in granting the writ of occupancy as set forth in the application.

By the provisions of chapter 162 of the Private Acts of 1921, a city planning commission was created for the city of Memphis, and by the same act the city was authorized to establish zoning districts within the corporate limits of said city, for the purpose of better regulating the use of streets and the use of property and sections and districts of the city and to prevent the congestion of traffic, and for the purpose of better protecting the public health, safety, convenience, and general welfare of said city. Under the authority of that act the city of Memphis by proper ordinances laid off the city into zones. The entire machinery for carrying out the purposes of the act was provided by ordinances, and the entire procedure for securing building permits is also provided, and for the issuance of certificates of occupancy and the use of buildings or premises, by an application by the owner or proposed operator or builder made to the commissioner of public utilities, grounds, and buildings. There is provided by the ordinance a board of adjustment consisting of seven members. Among other duties vested in the board of adjustment is that of reviewing on appeal by any person agreed by the action of the commissioner of public utilities, grounds, and buildings, the action of said commissioner. As stated in the opinion by this court in the former case between the same parties (15 Tenn. App., 575) : ''Broad discretionary powers are vested in the Board of Adjustment in all matters pertaining to the granting or the refusal to grant applications for permits for the use of premises and buildings within the city limits.''

By subsection 7 of section 17 of the ordinance it is provided:

''Interpret the provisions of this ordinance in such a way as to carry out the intent and purpose of the plan, as shown upon the map fixing the several districts accompanying and made a part of this ordinance, where the street lay-out actually on the ground varies from the street lay-out as shown on the maps aforesaid.''

By subsection 8 the duties of the board of adjustment are further set forth as follows:

''Interpret the provisions of this ordinance in harmony with their fundamental purpose and intent where practical difficulties or unnecessary hardships occur.''

In the former case we further stated in the opinion (15 Tenn. App., 575):

"We think it clear from the Acts of the legislature authorizing the zoning of the City of Memphis, and the creation of the machinery to carry into effect the purposes of the Act, and also from the ordinances of the City of Memphis, that the Board of Adjustment in its administrative capacity, is vested with the authority and duty of interpreting the various sections of the zoning ordinance, and is given a broad discretionary power in the matter of determining the questions that come before the Board for Adjustment. In fact, as the term implies, it is an adjustment board, created for the purpose of adjusting differences that may from time to time arise between the Commissioner of Public Utilities, Grounds and Buildings, or other officials charged with duties under the zoning ordinance, and citizens or property owners, or those desiring to use property and premises in the City of Memphis for certain purposes. It would be difficult, indeed, to draft an ordinance and create zones to meet every conceivable condition that may arise in the use of streets and property in a populous city."

Under the zoning ordinance six districts or zones are provided, as follows:

A, residence districts; B, residence districts; B1, apartment—shop district; C, commercial district; D, industrial district; E, unrestricted district.

It is admitted that the property in question is located in district or zone C, designated as a commercial district, and wherein it is provided that all buildings and premises, except as otherwise provided, may be used for any use permitted in the B district, or for any other use except seventeen specified purposes or businesses. Funeral homes and mortuaries are not included among the seventeen specified purposes or businesses excluded from C commercial by any special reference. Section D, or zone D, provides for the use of premises for all purposes permitted by C commercial, and all other businesses except a schedule of sixty-six different purposes specifically set forth, and by item sixty-seven under the heading of D district, it is provided:

"And in general those uses which have been declared a nuisance in any court of record, or which may be obnoxious or offensive by reason of the emission of odor, dust, smoke, gas or noise."

In the former case, the board of adjustment in denying the application of Qualls to use and occupy the premises in question as a funeral home and mortuary, rested its action on this item sixty-seven, and in the present case also rested its action in denying to Qualls his application to use the premises as a salesroom and display room and workroom in the sale, display, and preparing caskets, in the same item of

the ordinance, and also the authority vested in the board to interpret the ordinance so as to have it conform to the uses and purposes for which the zoning law was intended, and the interest and the protection that the zoning laws and ordinances are intended to subserve.

In the former case this court, in the opinion filed affirming the lower court, found and so held that the board of adjustment was not acting illegally or unlawfully or arbitrarily in refusing the permit to Qualls to operate a funeral home and mortuary on the premises, and hence would not reverse the action of the board in the matter of exercising the broad discretion vested in the board to pass upon and determine the facts, where it appeared that the very nature of the business of conducting funerals and preparing bodies for burial in a building located and situated as was this building, however orderly, skillfully, and scientifically the business would be conducted, would operate as a nuisance, and an inconvenience to those residing in the immediate vicinity, considering the close proximity of residences, and the narrow street and the inevitable resulting traffic congestion by funerals being conducted in the funeral home.

The same question is made in the present case on this appeal to the effect that the courts would not substitute their judgment for the judgment of the board of adjustment vested with broad discretionary powers, unless the action complained of was a clear denial of the rights and privileges of the property owner under any reasonable and fair construction of the zoning ordinance, and arbitrarily exercised to the prejudice and denial of legal rights. In the former case we reaffirmed this as being a sound principle, and in so doing followed the opinion of this court in the case of McPhillips v. City of Memphis,[1] filed July 30, 1929, and the cases therein cited.

On that question we now reaffirm our former holding. Hence, it is necessary to briefly review the facts of the present case as presented by the present record to determine whether or not the board of adjustment was acting illegally or arbitrarily in denying the present application of Qualls; and whether the board of adjustment by so acting, denied to Qualls a right or privilege that he was entitled to enjoy under the zoning laws in question properly interpreted under the facts as presented by the record.

It appears that Qualls has for many years owned and occupied the premises on Wellington street extending back to the rear end of the premises now owned by him on Vance street, as a colored funeral home and mortuary and from which colored funerals are held and bodies are prepared for burial. The present funeral home of Qualls on Wellington street, which extends back to the rear of the premises on Vance street, is separated by an alley from the premises fronting

---

[1] Not for publication. No petition for certiorari filed.

on Vance, now in question. By his application filed in the present case Qualls only seeks to use the premises on Vance street as a residence on the second floor, and the first floor for the display and sale of caskets. No bodies are to be prepared for burial; no embalming, and no funeral services to be conducted therein. The operation of such a business is not denied or included in the exclusions in this particular zone. If it be said that such a business located in a white residential district would be objectionable to residents in the vicinity, the fact remains that the use of the premises for such a purpose is not prohibited by the zoning ordinance. It is admitted by appellant that the fact that this property is to be occupied as a colored display and salesroom on a street occupied by white residents cannot be considered, and that no discrimination could be made between the occupancy of colored and white occupants or users for the same purpose. In the former case this court held that the use of the premises as a funeral home and mortuary, however orderly conducted, and however skillfully operated, would essentially constitute a nuisance by congesting traffic on the narrow street and by the unusual noises and odors to the great discomfort and inconvenience of those occupying homes in close proximity. In the present case, we have no such condition. The occupancy of the building as a salesroom and a display room could not operate as a congestion to traffic. There could be no unusual noises, or emotional expressions, or offensive odors which would be discomforting. In this situation and under the facts, can it be said that such a use of the premises would come properly within the provisions of the ordinance and especially item 67 of section D, which is, to repeat, "and in general those uses which have been declared a nuisance in any court of record or which may be obnoxious or offensive by reason of the emission of odor, dust, smoke, gas or noise?"

If the action of the board of adjustment is to be sustained, it must be done under said item 67 of zone D, above quoted.

In the case of Spencer-Sturla Co. v. City of Memphis, 155 Tenn., 70, 290 S. W., 608, 613, the zoning statute for Memphis was construed and held to be a constitutional enactment, the same being chapter 165 of the Private Acts of 1921, amended by chapter 428 of the Private Acts of 1925. In construing the constitutionality of the act, the court said:

"So also are provisions for the preservation of property values. We think the segregation of residence districts from commercial districts within a particular city, the control of the height and bulk of buildings with regard to the area of the lot on which such buildings are constructed, the limitation of the number of families who may occupy a single dwelling, are powers which may be reasonably

exercised by a municipal government for the protection and promotion of the public health, safety, morals, and welfare. . . .''

And in the opinion it is further stated:

''The scope of its exercise [the police power], within the bounds already mentioned, is limited only by the requirement that it shall not arbitrarily and unreasonably affect the citizen in his life, liberty, and property. It cannot be an excuse for oppressive legislation.'' Citing Davidson v. New Orleans, 96 U. S., 97 [24 L. Ed., 616]; Yick v. Hopkins, 118 U. S., 356 [6 S. Ct., 1064, 30 L. Ed., 220].

And in discussing the ordinance passed pursuant to the legislative act under consideration and on the subject of undertaking establishments, the court further said:

''The ordinance does not purport to deal with undertaking establishments by name or particular designation. They are excluded from the district only because they are commercial enterprises, not within the classes permitted in the district. The plaintiff in error is therefore entitled to contest the reasonableness of the ordinance, in that it excludes from the district commercial enterprises generally. We hold, upon the authorities hereinabove discussed, that such exclusion is a valid exercise of the police power.''

The zone including Vance street where the property in question is located, is specifically designated as a commercial zone, and only seventeen uses are excluded from zone C, and all other commercial uses are permitted except the seventeen designated. It must, therefore, be held that a commercial business not specifically excluded by the ordinance is permitted under commercial C zone, unless it comes within the provisions of item 67 of section D above quoted.

For the reasons hereinabove set forth, we are constrained to hold that under the undisputed evidence in the record in this case, the operation of the proposed business and use of the premises as set forth in the application does not bring it within any of the inhibitions provided in said item 67. It cannot be said that it would be a nuisance per se. It cannot be said that it would occasion unusual noises, or odors, or emotional expressions, or street traffic congestions.

We are further constrained to hold that the board of adjustment in denying the application, under the undisputed facts, was not warranted in so doing.

It results that we find no error in the judgment of the learned trial judge, and that the assignments of error must be overruled, and the judgment affirmed. Appellant and sureties on the appeal bond will pay the cost of this appeal.