Sharon BAILEY, Appellant,

v.

Robert S. UHLS, Director, Building Inspection Department, Appellee.

No. 44825.

Supreme Court of Oklahoma.

Nov. 21, 1972.

McClelland, Collins, Sheehan, Bailey & Bailey, Oklahoma City, for appellant.

Roy H. Semtner, Municipal Counselor, William O. West, Asst. Municipal Counselor, Oklahoma City, for appellee.

LAVENDER, Justice:

This is an appeal from a judgment of a district court affirming an order of the Board of Adjustment of the City of Oklahoma City. The Board's order denied this appellant's application for certain variances from the terms of the city's zoning or-

dinances to permit the erection of an advertising signboard on a lot owned by her.

The land involved is a vacant lot, 50 feet by 50 feet, as originally platted, which is bounded on the west by Pennsylvania Avenue, and on the north by Southwest 25th Street, in Oklahoma City. The lot is zoned for two-family dwelling purposes. Insofar as the zoning ordinance restrictions on use are concerned, the lot could be used for either a two-family dwelling or a single-family dwelling, and accessory buildings including a garage, but a "non-accessory" sign (one having nothing to do with a business being conducted on the lot) would be prohibited. Because of the applicable set-back requirements, neither a two-family dwelling nor a single-family dwelling could be constructed on the lot without obtaining variances from those restrictions of the zoning ordinance. Of course, under the use restrictions of the ordinance, a non-accessory sign could not be erected on the lot without obtaining a variance from that restriction.

Under the zoning regulations concerning signs where permitted, no *sign*—either accessory or non-accessory—may be erected, placed or replaced closer than 50 feet to the nearest property line of residentially developed or residentially zoned property. A copy of a portion of the city's zoning map, received in evidence by stipulation, shows that this lot is a part of a roughly triangular tract of land, the north side of which extends along Southwest 25th Street for slightly more than 100 feet, and the west side of which extends along Pennsylvania for slightly more than 100 feet, all of which is zoned as " 'B' Two Family Dwelling" district. On the other portion of the triangular tract, a house is shown within five to ten feet of the east property line of this lot and another house is shown within five to ten feet of the south property line of this lot.

This appellant applied to the city's Building Inspection Department for a permit to erect, on this 50-foot-by-50-foot lot, an illuminated signboard which would measure 10 feet by 30 feet, with the bottom edge nine feet above the ground. According to the plot plan attached to the application, the west property line of the lot is 38 feet from the curbline of Pennsylvania, and the signboard would be constructed approximately parallel to, and about 24 feet south of the north (25th Street) property line, with the west end thereof 15 feet from the west property line and the east end thereof five feet from the east property line.

The Director of the city's Building Inspection Department (the appellee herein) denied the requested permit on the ground that the use regulations in " 'B' Two Family Dwelling" zones, and the set-back requirements for signs, would be violated by the erection of the proposed signboard.

The applicant appealed therefrom to the city's Board of Adjustment and, in connection therewith, requested variances from the use restrictions and the set-back restrictions for signs. As grounds therefor, she alleged (a) that the granting of the permit will not be contrary to the public interest; (b) that literal enforcement of the ordinance will result in unnecessary hardship to the applicant; (c) that, by granting the permit contrary to the provisions of the ordinance, the spirit of the ordinance will be observed; and (d) that, by granting the permit, substantial justice will be done.

Those are, in essence, the requirements for a variance from the terms of a zoning ordinance prescribed in numbered paragraph (3) of the statute now appearing as 11 O.S.1971, § 407.

A number of owners of property in the vicinity of Southwest 25th and Pennsylvania filed protests and appeared at the hearing before the Board of Adjustment. After notice and hearing, the Board denied the requested variances and the permit.

The applicant appealed therefrom to the district court. That court heard the matter de novo, as provided by statute. After taking the matter under advisement and

receiving briefs of the parties on the questions involved, the district court, without making any special findings of fact, found that the requested variances should be denied, and affirmed the order of the Board of Adjustment. The applicant for the variances and permit appealed to this court.

Before discussing the evidence, we mention some of the basic principles applicable in these cases.

■ Within the guidelines of the empowering statute, the granting or denial of a variance from the terms of a zoning ordinance rests largely in the discretion of the body designated by the zoning ordinance for that purpose. Glasgow et al. v. Beaty et al. (1970), Okl., 476 P.2d 75, 77.

■ On appeal to the district court from the granting or denial of a variance from a zoning ordinance, the issues are the same, and the authority of the court with respect to the granting of the requested variance is the same as that of the board of adjustment. Board of Adjustment of Oklahoma City et al. v. Shanbour (1967), Okl., 435 P.2d 569, 573.

■■ In some cases involving variances from zoning ordinances, this court has characterized the proceedings in the district court on appeal from a board of adjustment as being in the nature of equitable proceedings, so that the question on review by this court is whether the judgment of the district court is consonant with, or is against the clear weight of the evidence. Twist et al. v. Kay (1967), Okl., 434 P.2d 180, 186; Brown, Building Superintendent v. Fraser (1970), Okl., 467 P.2d 464, 469. We have also held that the presumption in favor of the correctness of the determination arrived at by a board of adjustment on an application for a variance from a zoning ordinance, when such determination has been affirmed by the district court on appeal, should be given great weight and the discretion of the board of adjustment, so affirmed by the district court, should not be interfered with unless arbitrary or

clearly erroneous. Cash v. Beveridge, Building Superintendent (1938), 183 Okl. 310, 82 P.2d 665; Application of Shadid (1951), 205 Okl. 462, 238 P.2d 794. And, in Glasgow et al. v. Beaty et al., supra, this court said that the denial of a variance will be disturbed on appeal only on a clear showing of an abuse of discretion.

■ Certainly none of the above cases would allow this court simply to substitute its judgment and discretion for that of the district court, particularly where, as in the present case, the district court has affirmed the discretion and decision of the board of adjustment.

Prior to May 7, 1969, the statute now appearing as 11 O.S.1971 § 407 provided that boards of adjustment established thereunder would have certain powers, including:

"(3) To authorize *upon appeal* in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." (Emphasis supplied.)

■ Based thereon, this court held, in a number of cases, that, before a board of adjustment (or a district court on appeal therefrom) has authority to grant a variance from the terms of a zoning ordinance, the applicant for the variance has the burden of showing (a) that the granting of the variance will not be contrary to the public interest, and (b) that the literal enforcement of the ordinance will result in unnecessary hardship to the applicant for the variance, and (c) that, by granting the variance contrary to the provisions of the ordinance, the spirit of the ordinance will be observed rather than violated, and (d) that, by granting the variance, substantial justice will be done. See, for example, Application of Shadid (1951), 205 Okl. 462, 238 P.2d 794; Twist et al. v. Kay, su-

pra, and Brown, Building Superintendent v. Fraser, supra.

In the Brown case, this court stated that rule, with citations therefor, and quoted from Van Meter et al. v. H. F. Wilcox Oil & Gas Company (1935), 170 Okl. 604, 41 P.2d 904, 910, concerning the expressions "contrary to the public interest" and "unnecessary hardship," as used in statutes like Section 407, supra, and ordinances based thereon. It then said:

"As we understand it, the granting or refusal of a requested variance from a provision of a zoning ordinance, on the ground of unnecessary hardship resulting to the applicant from a strict application of such provision of the ordinance to his particular situation, is basically and primarily a matter of doing substantial justice as between the applicant and the public interest as declared in the zoning ordinance. And, as we understand the above-cited cases, all of the factors mentioned above are so interwoven that there is no showing of 'unnecessary hardship' requiring, or even justifying, the granting of the requested variance from a provision of a zoning ordinance unless the applicant for such variance shows that, as applied to him, such provision interferes with his ordinary legal property rights in a way that is peculiar to his situation and in such a degree of severity that its application to him is not necessary to carry out the spirit of the ordinance, so that, by granting the requested variance, substantial justice will be done without unduly, or in a marked degree, conflicting with the public interest, as declared in the ordinance."

As noted by the appellant herein, Section 407, supra, was amended as of May 7, 1969, prior to the filing of her application for a sign permit. That amendment left numbered paragraph (3), quoted above, intact except for deleting the words "upon appeal" therefrom, and added a new numbered paragraph:

"(5) A variance may be granted upon a finding by the Board of Adjustment that:

"(a) The application of the ordinance to the particular piece of property would create an unnecessary hardship;

"(b) Such conditions are peculiar to the particular piece of property involved; and

"(c) Relief, if granted, would not cause substantial detriment to the public good, or impair the purposes and intent of the ordinance or the comprehensive plan."

We cannot agree with the appellant's argument that the Legislature substituted that paragraph for the requirement in numbered paragraph (3) of Section 407, and in the corresponding rule concerning the burden of proof in these cases, that the variance not be contrary to the public interest. It is not in conflict with numbered paragraph (3) or that rule as explained in Brown v. Fraser, supra, and did not change, or relax, the statutory requirements for a variance on the grounds of unnecessary hardship. The same rule as to the burden of proof in these cases, as explained in Brown v. Fraser, must be applied in this case.

The zoning map section mentioned above includes the area between Southwest 22nd Street on the north and Southwest 29th Street on the south, and between Young Avenue, two blocks west of Pennsylvania, and Kentucky Avenue, two blocks east of Pennsylvania. An elongated city park, which extends from 22nd to 29th but traversed by several east-west streets, abuts the above-mentioned triangular tract on the south and east, along the "hypotenuse" of that tract. Immediately north of that tract, a public school and schoolground is located on the east side of Pennsylvania, between 23rd and 25th Streets. The entire mapped area to the east of Pennsylvania, between 22nd and 28th, is zoned as " 'B' Two Family Dwelling" district, except for two lots at 22nd and Pennsylvania

and five lots at 25th and Kentucky, which are zoned as " 'E' Local Commercial" districts. Except for two lots at 22nd and Pennsylvania, the entire mapped area west of Pennsylvania, between 22nd and 28th, is zoned as " 'A' Single Family Dwelling" district.

There is evidence that traffic signal lights control traffic at the intersection of 25th and Pennsylvania, and that both streets are paved and, for some distance both ways from that intersection, both streets are marked for four lanes of traffic. It was stipulated that during a 24-hour period (not identified in the record), 21,800 vehicles passed through that intersection. An assistant to the appellee herein said that, with that traffic count, it would be classified as a moderate-traffic intersection.

There was considerable testimony to the effect that most of the houses in the immediate neighborhood were of frame construction and were built in the 1920s and 1930s; and that some of them were kept in good condition but some were not.

Oklahoma City's zoning ordinance was originally enacted in 1947. There was evidence that, as early as 1945, when one witness purchased his home in the block south of 25th on the west side of Pennsylvania, the lot involved herein was a vacant lot, there were houses abutting the lot on the east and south, the park and the school were in the same places, and the general character of the area was the same at the time of the district court hearing.

Richard R. Bailey testified, in substance, as follows: He had held a mortgage on the lot and purchased the lot at execution sale in October of 1967. At that time, he was aware of the zoning regulations applicable to the lot and intended to build a house on the lot. The lot looked larger than it is, because the property line is so far from the curbline of Pennsylvania. Some time later, he put up a "for sale" sign and got three or four calls on it, but "nothing of any interest," and a realtor tried to sell it for him, but without success. He

was asking $2,500 for the lot at that time. He talked to a friend in the photo-mat business about buying the lot and was told the lot was too small to be used for that purpose. Some realtors and other people he talked to told him the lot was too small for any commercial use. Under the present zoning restrictions, the lot is valueless, because you cannot do anything with it. It would be worth from $3,000 to $5,-000, on a rental basis of $50 per month, as the site for a signboard. It is not a desirable location for a residence, because it is at a heavily-traveled intersection.

The only other witness for the applicant—a real estate broker, appraiser, and business consultant—testified, in substance, as follows: The lot is not large enough for any business or industrial use. Because of the set-back requirements, it would be impossible to construct either a two-family, or a single-family, dwelling on it. Without those restrictions, a house on the lot would not be a desirable residence, because it would be too close to the street traffic, and a driveway for a residence would have to be within 50 feet of the busy intersection and so would be a traffic hazard for the occupants as well as for others. If the lot were 140 by 25 or 50 feet, it would be a desirable location for a house. Under the present zoning restrictions, the value of the lot is negative because of the expense of having the weeds cut in summer, and the taxes. If a billboard could be placed on the lot, it would, in his opinion, be worth $3,000 on a capitalized-rental basis. A billboard would not make the abutting properties less desirable and would enhance the property abutting this lot on the east.

An assistant to the appellee herein, who held that position for about three years, was Director of Planning for Midwest City for two and one-half years preceding that, and holds a bachelor's degree in architecture, and a master's degree in regional and city planning, from the University of Oklahoma, testified, in substance, as follows: The lot is too small for any feasible

business use. With proper set-back variances, a small rent house could be placed on the lot and would be feasible and compatible with the zoning. Particularly with the 38 feet between the west property line and the curbline of Pennsylvania, such a structure would not interfere with the view of traffic on 25th from Pennsylvania. A home driveway within 50 feet of a busy intersection would be no more of a traffic hazard than service station drives at such intersections. In his professional opinion, the proposed signboard on this lot would impair the enjoyment of "adjacent" properties, and, as a professional planner, he would not recommend such a signboard there.

The owner and occupant of a house across Pennsylvania west from this lot, testified that he intended to live there the rest of his life and that he filed a protest to this sign because he doesn't think it would "help beautify" this residential neighborhood.

The last witness for the appellee was the Executive Director of Oklahoma City Beautiful, Incorporated, which he identified as a civic organization that works with all departments of the city, county and state governments for the enhancement of all elements of the environment. He testified that the lot is in a fairly nice neighborhood, with most of the houses reasonably well kept—"an average older neighborhood;" and that the proposed signboard would, in his opinion, violate the environment of the dwellings, the school, and the park, in the neighborhood. He said that he does not think this is a desirable location for a residence, but not because of the traffic situation.

There is no evidence that any one ever applied for any variance from the set-back requirements for a dwelling on this lot. No one testified that this lot would be valueless for residential purposes if the necessary variances were obtained. No one testified that, insofar as locations are concerned, this lot on the southeast corner of the intersection would be any less desirable, or any less valuable, for residential purposes than either of the residentially-zoned lots on the northwest and southwest corners of the same intersection.

It would be useless to consider the matter of a variance from the zoning restrictions concerning signs where signs are permitted, unless a variance from the zoning restrictions concerning use of lots in "'B' Two Family Dwelling" districts, to allow the construction of a sign on this lot would have been proper.

Insofar as her evidence is concerned, this applicant's theory seems to be that an economic hardship exists—not because a single-family dwelling not meeting the set-back requirements of the ordinance would have no rental value, but because the return on her investment would be just as great, if not greater, if a signboard could be placed on this lot contrary to the use restrictions applicable to this lot instead of such a single-family dwelling. She argues that such hardship is an "unnecessary hardship" within the contemplation of the statute, in that the spirit of the use restrictions would not be violated by the placing of a sign on this lot, because the lot is in a "declining" neighborhood of older houses, some of which (including one of the two houses abutting the lot) are not kept in good condition. In the case of one house, two old cars, without wheels, have been parked in the front yard for some time.

It is also suggested that the spirit of the use restrictions would not be violated by the erection of the proposed signboard on this lot because the bottom of the signboard would be nine feet above the ground and would not obstruct the view, from a north-bound lane of Pennsylvania, of west-bound traffic on 25th Street as much as would a residence not meeting the set-back requirements. Particularly in view of the fact that the traffic at the intersection is controlled by traffic signal lights, that fact would appear to be wholly immaterial.

■ We cannot say that a judgment denying the requested variances on a finding by the trial court that the applicant failed

**884**

to meet the burden of proving the requirements for a variance from the terms of a zoning ordinance would be against the clear weight of the evidence, or clearly erroneous, or arbitrary, or an abuse of discretion.

The applicant's only contention in her original brief herein—that the trial court's judgment against her was, of necessity, based upon an erroneous application of the "self-imposed hardship" rule—is based upon an erroneous assumption that the trial court made specific findings, in essence, that she had met that burden of proof and would be entitled to the requested variances unless precluded by the "self-imposed hardship" rule.

 Under Board of Adjustment of Oklahoma City et al. v. Shanbour, supra, that rule would not be applicable to this applicant who did nothing herself to render the property incapable of being used without some variance from the terms of the zoning ordinance. However, the statements of the trial judge, relied upon by the applicant in this argument, were not made at the time the decision was announced, but were made at the close of the evidence and, in fact, were not as specific or complete as claimed by the applicant. In the journal entry of the judgment, the trial court made no special findings of fact or conclusions of law, but made only a general finding that the requested variances should be denied, and affirmed the order of the Board of Adjustment.

Where a general judgment does not reflect the ground upon which it is based and it could have been based upon either of two grounds, one of which would be erroneous and the other proper, it is presumed that the judgment was based upon the proper ground. Western Paving Company v. Board of Commissioners of Lincoln County et al. (1938), 183 Okl. 281, 81 P.2d 652; Seely v. Seely (1959), Okl., 348 P.2d 1064. And, a general judgment is deemed to include special findings on any

and all issues necessary to sustain the judgment. Glasgow et al. v. Beaty et al., supra.

Judgment affirmed.

BERRY, C. J., DAVISON, V. C. J., and JACKSON, IRWIN, HODGES, BARNES and SIMMS, JJ., concur.

WILLIAMS, J., dissents.