Bridget VINSON, Plaintiff/Appellee,

v.

Merrell H. MEDLEY, Director, Community Development Department, Defendant/Appellant,

and

Ratliff Exploration Company, Intervenor/Appellant.

Nos. 64894, 64775.

Supreme Court of Oklahoma.

May 19, 1987.

Robert D. Allen, Municipal Counselor, Kenneth D. Jordan, Asst. Mun. Counselor, Oklahoma City, for appellant/defendant.

Michael J. Blaschke, Martha Martin, Mahaffey & Gore, Oklahoma City, for appellant/intervenor.

Robert J. Emery, Emery, Smith & Emery, Oklahoma City, for appellee/plaintiff.

Thomas G. Ferguson, Jr., Kimball, Wilson & Walker, Oklahoma City, for amicus curiae Hadson Petroleum Corp. and Trineha, Inc.

Richard K. Books, Patricia A. Watts, Watson & McKenzie, Oklahoma City, for amicus curiae Tenneco Oil Co.

Dale E. Cottingham, Moricoli, Wilson, Harris & Dubberstein, Oklahoma City, for amicus curiae Pogo Producing Co., Canadian Exploration Corp., Lario Oil & Gas Co. and An-Son Corp.

Richard J. Gore, J. Jayne Jarnigan, Mahaffey & Gore, Oklahoma City, for amicus curiae Oexco, Inc.

Gregory L. Mahaffey, J. Jayne Jarnigan, Mahaffey & Gore, Oklahoma City, for amicus curiae Donald C. Slawson.

OPALA, Justice.

Two questions are presented for review: [1] Does the Oklahoma City Board of Adjustment have the power to grant a variance for an oil-and-gas well to be drilled outside the U–7 zone? [2] If this be answered in the affirmative, did the applicant meet the prerequisites for a variance? We answer both questions in the affirmative.

Ratliff Exploration Company [Ratliff],[1] intervenor-appellant, filed an application with Merrell H. Medley, Director of the Community Development Department [Director], appellant, to drill an oil-and-gas well within the corporate limits of Oklahoma City [City] upon a tract that is located in the "I–2 Moderate Industrial District" and lies within an area compulsorily pooled by a Corporation Commission order. The permit was denied because it would have violated certain Oklahoma City Code ordinances that prohibit the drilling of wells outside a U–7 drilling zone. Ratliff sought relief from the Oklahoma City Board of Adjustment [Board]. The Board granted Ratliff the requested variance and ordered the Director to issue the permit.[2]

Bridget Vinson [homeowner] appealed to the district court from the Board's order and challenged the Board's authority to grant a variance for drilling an oil-and-gas well. The trial court allowed Ratliff to intervene in order to protect its interests. At trial it was established that the proposed well site was situated adjacent to the Hardy Acres housing addition where the homeowner resided. Both the Hardy Acres development and the drill site were located within an I–2 Moderate Industrial District where many industrial uses are currently found. The well site is approximately 300 feet south of the housing development and

---

1. After the homeowner had brought her appeal in the district court, Ratliff was acquired by TXO Production Company.

2. The Board made the following findings: [1] the property was located in the I–2 Moderate Industrial District, [2] the granting of a permit would not have any adverse effect upon the surrounding property owners, *but to deny the* *permit would constitute an unwarranted hardship and an unreasonable deprivation of the use of Ratliff's property,* [3] there are conditions peculiar to the particular property involved; and [4] the granting of the variance would not be detrimental to the health, safety and general welfare of the inhabitants.

1,380 feet from the homeowner's house. Following a *de novo* trial the district court found that Ratliff did not meet its burden of proof and denied it the right to drill the proposed well. At first the court below upheld the Board's power to grant a variance but, upon a timely motion for new trial, this ruling was amended. By its modified decision the trial court held that Article XII [3] of the City Charter prohibited the Board from granting *any* variance for oil-and-gas wells to be drilled outside an established U-7 zone. Both Ratliff and the Director brought separate appeals which stand consolidated for our disposition by a single opinion.

## I

## THE POWER OF THE BOARD TO GRANT VARIANCES FOR OIL-AND-GAS WELLS TO BE DRILLED OUTSIDE THE U-7 ZONE

The homeowner contends that Article XII of the Oklahoma City Charter [4] and 11 O.S.1981 § 44-104 [5] are in conflict insofar as they affect the drilling of oil-and-gas wells within the city limits outside a U-7 zone. The homeowner argues that, when the Board grants a drilling variance, the Board is committing an ultra vires act because it is ignoring the charter's restriction. Under the home-rule doctrine, [6] the homeowner urges, the City Charter supersedes conflicting state law on matters of

---

**3.** The terms of Article XII of the Oklahoma City Charter provide in pertinent part:

"Section 1. Oil and Gas Drilling Zones—Approval by Electors. *The City Council* of Oklahoma City, Oklahoma, *shall not pass any ordinance, motion or resolution creating any additional zone for drilling for oil or gas, nor shall said Council amend any existing ordinance, relating to the drilling of wells for the production of oil or gas within the said City whereby the U-7 or Oil Drilling Zone is enlarged or extended until the question has been submitted to the qualified electors of The City of Oklahoma City,* and approved by them by a majority vote of those voting at said election; such question to be submitted to the said electors at a general or special election. (Charter, November 28, 1934.)

Section 2. Submission of Ordinance by Council. The City Council of The City of Oklahoma City may, on its own motion, submit to the qualified voters of the said City any ordinance or resolution having for its purpose the creation of an additional Oil and Gas Drilling Zone, or extension of present Oil and Gas Drilling Zone, defined by the ordinances now in force relating to drilling for oil or gas, within said City, the costs of said election to be paid out of moneys appropriated by the said City for special elections. (Charter, November 28, 1934.)

Section 3. Petition for Additional Zones—Deposit for Election Expense. Whenever any person, firm or corporation shall file with the City Clerk of said City a petition or request in writing for the creation of an additional Oil or Gas Drilling Zone or for the extension of the U-7 Drilling Zone as now defined by ordinance, the Mayor of said City shall submit said petition or request to the qualified electors of the said City at the next general election held in said City for the election of City officers, or at a special election at which the said petition or request shall be submitted to the voters for their approval or rejection. * * *" [Emphasis supplied.]

**4.** See footnote 3 *supra* for the pertinent provisions of Article XII.

**5.** The *currently effective* version of 11 O.S.1981 § 44-104 was enacted in the 1984 session (Okl. Sess.L.1984, Ch. 126 § 76, effective November 1, 1984).

The terms of the *then-effective text* of 11 O.S. 1981 § 44-104 provided:

"The board of adjustment shall have the following powers:
1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of any zoning ordinances;
2. To hear and decide special exceptions to the terms of the ordinance upon which the board of adjustment is required to pass under such ordinance;
3. To authorize in specific cases such variances from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done; and
4. Exceptions and/or variances may be allowed by the board of adjustment only after notice and hearing as provided in Section 44-108 of this title."

**6.** The terms of 11 O.S.1981 § 13-109 provide:

"Whenever a charter is in conflict with any law relating to municipalities in force at the time of the adoption and approval of the charter, the provisions of the charter shall prevail and shall operate as a repeal or suspension of the state law or laws to the extent of any conflict."

**936**

purely municipal concern.[7] Ratliff and the Director contend there is no conflict and the Board does have the power to grant oil-and-gas variances.[8]

▮ This court has addressed itself to the issue of conflicts between municipal ordinances or charter provisions and state law.[9] A city charter draws its legal vitality from Art. 18, § 3(a), Okl. Const.[10] and from the implementing provisions of 11 O.S.1981 § 13–101.[11] It has the force of a city's fundamental law.[12] Municipal ordinances are legislative acts of the city's governing body and have the same effect within the corporate limits as a state statute. A city charter supersedes state law *only* when it affects a subject that is deemed to lie exclusively within municipal concern.[13] A conflict between a state enactment and a municipal charter or ordinance may be found to exist when both contain either express or implied conditions that are inconsistent and irreconcilable with one another. If one is silent on the issue and the other speaks to it, there can be no conflict.[14]

▮ Oklahoma jurisprudence recognizes the *legislative* authority of a city to enact zoning ordinances[15] and the *adjudicative* power of its board of adjustment to grant variances from city ordinances.[16] A city is empowered to enact zoning laws to regulate the drilling of oil-and-gas wells with a view to safeguarding public welfare.[17] Without these regulations residents would be exposed to multiple dangers and unnecessary inconveniences.[18] A city that exercises zoning powers is statutorily mandated to establish a board of adjustment[19] whose function is to deter-

---

**7.** In support of her argument the homeowner cites to *Lackey v. State*, 29 Okl. 255, 116 P. 913 [1911]; *C.C. Julian Oil & Royalties Co. v. Oklahoma City*, 167 Okl. 384, 29 P.2d 952 [1934] and *Makrauer v. Board of Adjustment of City of Tulsa*, 200 Okl. 285, 193 P.2d 291 [1948].

**8.** Ratliff's and the Director's argument relies on *Pelican Production Corp. v. Mize*, Okl., 573 P.2d 703 [1978] and *Nucholls v. Board of Adjustment of City of Tulsa*, Okl., 560 P.2d 556 [1977]; *Winthrow & Walker, Inc. v. Board of Adjustment*, Okl., (unpublished opinion), No. 50,297 [1976].

**9.** *State ex rel. Burns v. Linn*, 49 Okl. 526, 153 P. 826, 827 [1915]; *City of Pawhuska v. Pawhuska Oil & Gas Co.*, 64 Okl. 214, 166 P. 1058, 1062 [1917]; *Nucholls v. Board of Adjustment, supra* note 8 and *Oliver v. City of Tulsa*, Okl., 654 P.2d 607, 609 [1982].

**10.** The terms of Art. 18 § 3(a), Okl. Const., provide in pertinent part:

"Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, *consistent with and subject to the Constitution and laws of this State,* . . . . Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it. * * * " [Emphasis supplied.]

**11.** The provisions of 11 O.S.1981 § 13–101 are:

"Any city or town containing a population of two thousand (2,000) inhabitants or more, as shown by the latest federal census or other census recognized by the laws of Oklahoma, may frame a charter for its own government."

**12.** *Lee v. Norick*, Okl., 447 P.2d 1015, 1018 [1968].

**13.** *Farmer v. City of Sapulpa*, Okl., 645 P.2d 518, 520 [1982]; *Lee v. Norick, supra* note 12 at 1018;

*Walton v. Donnelly*, 83 Okl. 233, 201 P. 367, 369 [1921] and *Oliver v. City of Tulsa, supra* note 9 at 609.

**14.** See *Moore v. City of Tulsa*, Okl., 561 P.2d 961, 963 [1977].

**15.** *Garrett v. City of Oklahoma City*, Okl., 594 P.2d 764, 765 [1979].

The city has the authority to regulate the drilling of oil-and-gas wells within its corporate limits. *City of Sand Springs v. Colliver*, Okl., 434 P.2d 186, 190 [1967]; *Van Meter v. Westgate Oil Co.*, 168 Okl. 200, 32 P.2d 719, 720 [1934] and *Oklahoma City v. Harris*, 191 Okl. 125, 126 P.2d 988 [1941].

**16.** A board of adjustment is empowered to grant variances in order to prevent unnecessary hardships. *Twist v. Kay*, 434 P.2d 180, 183–184 [1967] and *Nucholls v. Board of Adjustment of City of Tulsa, supra* note 8 at 559. See also *Melton v. City of Durant*, Okl., 521 P.2d 1372, 1375 [1974]; *O'Rourke v. City of Tulsa*, Okl., 457 P.2d 782, 786 [1969]; *Eason Oil Co. v. Uhls*, Okl., 518 P.2d 50, 52 [1974] and *Van Meter v. H.F. Wilcox Oil & Gas Co.*, 170 Okl. 604, 41 P.2d 904, 909–910 [1935].

**17.** *Nucholls v. Board of Adjustment, supra* note 8 at 560 and *Clouser v. City of Norman*, Okl., 393 P.2d 827, 829 [1964].

**18.** *Van Meter v. H.F. Wilcox Oil & Gas Co., supra* note 16, 41 P.2d at 910.

**19.** The terms of 11 O.S.1981 § 44–101 provide in pertinent part:

"Where a municipality is exercising zoning powers, as conferred by Section 43–101 through 43–109 of this title, the governing body of the municipality shall provide by ordinance for the appointment of a Board of Adjustment. * * * "

mine whether a variance should be granted to permit an owner to use his property in a manner prohibited by the ordinance.[20] In a proper case the board is empowered to make an adjustment and grant a variance from a city zoning ordinance where its literal enforcement would create unnecessary hardship or prevent a constitutionally permissible use of property. The board is an administrative agency which acts in an adjudicative capacity to determine whether the criteria for a variance have been met.[21] The effect of a variance relaxes the generally applied rules of the ordinance to alleviate conditions that are peculiar to a particular tract of land.[22] On a case-by-case basis agency review of a zoning ordinance's validity affords elasticity in the application of a city's regulatory measures to prevent them from operating in an arbitrary or confiscatory manner. The mechanism provided by this approach assures protection for an owner's fundamental right to use and enjoy his property.[23] In sum, upon a proper showing the board is empowered to make an adjustment and to grant a variance from the city zoning ordinance where

its literal enforcement would work either unnecessary hardship or result in constitutional deprivation.

 The City Charter, Art. XII, requires a vote of the electors to enlarge or to create U–7 drilling zones.[24] It limits the city's legislative powers but does not address itself to the adjudicative powers of the Board to grant variances in the manner provided by 11 O.S.1981 §§ 44–104 [25] and 44–107.[26] The Board is not empowered to pass *legislative* acts like those of the City's governing body. Rather, its powers are purely *adjudicative*.[27] It may only determine whether a variance should be granted after applying pertinent statutory criteria to the existing physical facts in the *locus in quo*.[28] The board cannot create new zones through variances. We hence conclude that no conflict exists between the invoked provisions of the City Charter and the challenged state law. Moreover, even if the charter could be read as a limitation on the City's exercise of adjudicative power, it could not pass constitutional muster when tested by the minimum standards of due process, state or federal.[29]

20. *Twist v. Kay, supra* note 16.

21. *Oklahoma City v. Harris, supra* note 15, 125 P.2d at 992, and *Twist v. Kay, supra* note 16 at 183.

22. *Nucholls v. Board of Adjustment of City of Tulsa, supra* note 8 at 559.
A variance is an administrative authorization for the construction of a structure or, as in the present case, for the establishment of a use which is prohibited by a zoning enactment. *It is, in essence, a form of relief that prevents the confiscation of property and is granted where the literal enforcement of a zoning ordinance would result in unnecessary hardship or practical difficulties to the property owner.* See *Clerics of St. Viator, Inc. v. D.C. Bd. of Zoning Adjust.,* 320 A.2d 291, 294 [App.D.C.1974] and Charles S. Rhyne, *The Law of Local Government Operations,* § 26.53, p. 808 [1980].

23. *Nucholls v. Board of Adjustment of City of Tulsa, supra* note 8 at 559 and *City of Sand Springs v. Colliver, supra* note 15 at 190–191.

24. See footnote 3 *supra* for the pertinent terms of Article XII of the Oklahoma City Charter.

25. See footnote 5 *supra* for the text of 11 O.S. 1981 § 44–104.

26. The text of 11 O.S.1981 § 44–107 provides:

"A variance from the terms of the ordinance may be granted, as provided in this article, only upon a finding by the board of adjustment that:
1. The application of the ordinance to the particular piece of property would create an unnecessary hardship;
2. Such conditions are peculiar to the particular piece of property involved; and
3. Relief, if granted, would not cause substantial detriment to the public good, or impair the purposes and intent of the ordinance or the comprehensive plan."

27. *Oklahoma City v. Harris, supra* note 15, 126 P.2d at 992, and *Twist v. Kay, supra* note 16 at 183.

28. See the provisions of 11 O.S.1981 § 44–107, *supra* note 26.

29. A city charter provision that *severely restricts* an owner's opportunity to test the validity of a zoning ordinance against the *basic physical facts* in the *locus in quo* is constitutionally infirm. See *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2041, 64 L.Ed.2d 741 [1980]; see also *City of Tulsa v. Swanson,* Okl., 366 P.2d 629, 632–633 [1961]; *Oklahoma City v. Barclay,* Okl., 359 P.2d 237, 241–242 [1961] and *City of Sand Springs v. Colliver, supra* note 15 at 190.

## II

## THE CRITERIA NECESSARY TO GRANT A VARIANCE

### A. *The Presumption of Validity of the Board's Decision*

Ratliff argues that it is entitled to the presumption of validity that attaches in favor of the Board's decisions.[30] We agree that in variance cases a presumption does exist in favor of the correctness of the Board's rulings. A granted variance will be accorded great weight and will not be disturbed when it has been affirmed on appeal by a district court unless it is clearly arbitrary or erroneous. Because in this case the Board's decision was reversed, the presumption that initially attached to its validity is to be regarded as having been overcome by the adverse ruling of the trial court.

### B. *Burden of Proof*

Ratliff contends that on appeal to the district court the petitioner (homeowner) has the burden of proof to show that the elements of a variance were not met.

A proceeding to review a board's decision either to grant or to deny a variance is equitable in nature.[31] Unless clearly contrary to the weight of the evidence, the district court's decree will not be disturbed.[32] The trial court must conduct a *de novo* inquiry[33] and it has the same power as the Board to grant or to deny a variance.[34] There must be a complete examination of all issues, both of fact and law. The cause stands as if it has never been resolved before. Thus the burden of proof does not shift but rests on the same party as in the lower tribunal.[35] Since Ratliff had the burden to prove before the Board that the elements necessary for a variance had been met, it also bore the same responsibility in the district court.

### C. *Elements Necessary for a Variance*

The Board may grant a variance to a landowner if the landowner can show that: [1] a variance would not be contrary to public interest; [2] an unnecessary hardship would arise if the ordinance were literally enforced; [3] the spirit of the ordinance would be upheld; and [4] substantial justice would be done by granting the variance.[36] A variance is contrary to the public interest if, in the opinion of a reasonable man, it conflicts with public interest.[37] An unnecessary hardship is found when: [1] there is some degree of interference with an ordinary legal property right from which the hardship would arise; [2] the hardship is peculiar or unique to the applicant's situation; [3] the degree of severity of the hardship imposed by the ordinance is not essential to carry out the spirit of the ordinance and [4] substantial deprivation results to the applicant.[38]

Ratliff claims that it has met the requirements for a variance. First, it contends

**30.** In support of its argument Ratliff cites to *Banks v. City of Bethany*, Okl., 541 P.2d 178 [1975]; *Melton v. City of Durant, supra* note 16; *Glasgow v. Beaty*, Okl., 476 P.2d 75 [1970] and *Whitcomb v. City of Woodward*, Okl.App., 616 P.2d 455 [1980].

**31.** *Banks v. City of Bethany, supra* note 30 at 180; *Melton v. City of Durant, supra* note 16; *Brown v. Fraser*, Okl., 467 P.2d 464, 469 [1970] and *Whitcomb v. City of Woodward, supra* note 30 at 456.

**32.** See cases cited in footnote 31 *supra*.

**33.** The terms of 11 O.S.1981 § 44–110(D) provide:
"The appeal shall be heard and tried de novo in the district court. All issues in any proceedings under this section shall have prefer-ence over all other civil actions and proceedings."

**34.** *Bailey v. Uhls*, Okl., 503 P.2d 877, 880 [1972]; *Brown v. Fraser, supra* note 31 and *Shelton v. Lambert*, Okl., 399 P.2d 467 [1965].

**35.** *Shelton v. Lambert, supra* note 34 at 470.

**36.** *Twist v. Kay, supra* note 16 at 184; see *Van Meter v. H.F. Wilcox Oil & Gas Co., supra* note 16.

**37.** *Van Meter v. H.F. Wilcox Oil & Gas Co., supra* note 16, 41 P.2d at 910.

**38.** *Van Meter v. H.F. Wilcox Oil & Gas Co., supra* note 16, 41 P.2d at 910. In *Van Meter, supra* note 16, the Court held that an increased density well did not meet the requirements of unnecessary hardship.

that granting the variance will not be contrary to public interest and that any interference to the homeowner will be negligible. This is so, Ratliff asserts, because the well site is located 1380 feet from the homeowner, far over the minimum requirement of 300 feet. Furthermore, after the well is drilled, an aesthetically pleasing low-profile tank battery will be used and would be concealed from the view of the homeowner. The value of the residential homes in the area will not be affected. Also, Ratliff asserts, the well will not produce any excess noise, odor or vibrations.

Ratliff argues that there is a high probability of recoverable quantities of hydrocarbons under the property.[39] Refusal to grant a variance would deny the mineral owner the ability to enjoy any of his subsurface property rights—a substantial deprivation in the constitutional sense. According to Ratliff, all necessary precautions will be employed to minimize the well's adverse impact. A separate service road will be used to divert drilling-related traffic from public residential streets.

 The homeowner argues that Ratliff has failed to meet the necessary requirements for a variance. She asserts that Ratliff has imposed upon itself the financial hardship from which it seeks relief by acquiring a leasehold in the face of charter and leasehold restrictions.[40] She further argues that the well will produce excessive noise and dangers to the residents of Hardy Acres.

Reviewing the standards articulated in 11 O.S.1981 § 44–107, we hold that the district court's decree is clearly contrary to the weight of the evidence and that Ratliff should be granted a variance. The distance between the well and the residential area is far over the minimum requirements of 300 feet and over three times the required distance from the homeowner's residence. Ratliff's use of a low-profile tank battery, fences and a separate service road are all promotive of public safety and welfare within the intent of the ordinance. Unlike increased density wells, Ratliff's well will be the first one drilled in this spacing unit established by the Corporation Commission. The land is unique because of the high probability of recoverable hydrocarbons. Without a variance, Ratliff would suffer a substantial deprivation of its right to enjoy a valuable property interest in extracting the underlying hydrocarbons.

The district court's decree is reversed with directions to reinstate the Board's order.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, SIMMS, WILSON and KAUGER, JJ., concur.

SUMMERS, J., not participating.

---

**39.** The proposed well will be the first one drilled on the 40-acre pooled spacing unit established by the Corporation Commission. It is not an increased-density well.

**40.** A financial hardship alone is not a basis for a variance. *Matter of Schrader,* Okl., 660 P.2d 135, 138 [1983]: A self-imposed hardship is no basis for a variance. *Board of Adjustment of Oklahoma City v. Puckett,* Okl., 353 P.2d 4, 6 [1960].