Dear Representative Paulk,
¶ 0 This Office has received your letter asking for an official Opinion addressing, in effect, the following questions:
1. Has the Legislature preempted the regulation of personsengaged in boiler and pressure vessel service, repair, andinstallation, through passage of the Boiler and Pressure VesselSafety Act, 40 O.S. 1991 and Supp. 1998, §§ 141.1-141.19,such that any regulation by municipalities is prohibited?
 2. Are municipalities authorized to require payment of alicensure fee or passage of a licensure examination if an entityor person is licensed under the Boiler and Pressure Vessel SafetyAct?
¶ 1 The Boiler and Pressure Vessel Safety Act governs regulation of persons engaged in the service, repair, and installation of boilers and pressure vessels in the State of Oklahoma. 40 O.S. 1991 and Supp. 1998, §§ 141.1-141.19 and OAC380:25-1-1 to 380:25-17-3. The Commissioner of Labor has been given the power and duty to promulgate rules in order to carry out the provisions of the Act. You have asked this Office to determine whether municipalities may similarly regulate persons engaged in boiler and pressure vessel service, repair, and installation in the State of Oklahoma. In order to answer your inquiry, we will discuss the nature of municipalities and review principles of law respecting concurrent jurisdiction, which includes a determination of whether the Legislature has expressly or impliedly preempted municipalities from regulating persons engaged in boiler and pressure vessel service, repair, and installation. Furthermore, we will examine whether the Legislature has given municipalities the power to regulate boilers and pressure vessels, and what test must be applied in order to determine if an ordinance conflicts with existing statutory provisions. Finally, we will consider restrictions placed on a municipality's licensing power in the event that concurrent jurisdiction exists.
 NATURE OF MUNICIPALITIES
¶ 2 An Oklahoma municipality, while it possesses no inherent authority, may exercise those powers, expressly or fairly implied, granted to it by the Legislature. A.G. Opin. 96-53, citing City of Hartshorne v. Marathon Oil Company, 593 P.2d 97,99 (Okla. 1979); Shipp v. Southeastern Oklahoma IndustriesAuthority, 498 P.2d 1395, 1398 (Okla. 1972). Municipalities are defined as incorporated cities or towns, 11 O.S. 1991, §1-102[11-1-102](5), created by the Legislature, Okla. Const. art. XVIII, §1, 11 O.S. 1991, § 2-101[11-2-101], and typically characterized by population and the existence of a municipal charter, Okla. Const. art. XVIII, § 3(a), 11 O.S. 1991, § 13-101[11-13-101]. Charter municipalities and non-charter municipalities are distinguishable and therefore will be addressed separately.[1]
¶ 3 Municipalities with populations exceeding 2,000 inhabitants, which have adopted charters consistent with ArticleXVIII of the Oklahoma Constitution, Section 3(a), and 11 O.S.1991 and Supp. 1998, §§ 13-101 through 13-115, possess the power "to enact and enforce ordinances to protect the public peace, order, health, morals and safety of its inhabitants even though general statutes exist relating to the same subjects." Moore v.City of Tulsa, 561 P.2d 961, 963 (Okla. 1977) (citing Spargerv. Harris, 131 P.2d 1011, 1013 (Okla. 1943)). While municipal charter provisions serve as the organic law of the municipality and supersede conflicting statutes involving matters of purely local concern, charter provisions cannot contradict State constitutional provisions and will not prevail over those conflicting statutory provisions which concern a statewide interest. State v. Linn, 153 P. 826, 828 (Okla. 1915). Seealso Vinson v. Medley, 737 P.2d 932, 936 (Okla. 1987); Moore v.City of Tulsa, 561 P.2d 961, 963 (Okla. 1977); Sparger v.Harris, 131 P.2d 1011, 1013 (Okla. 1943).
¶ 4 A non-charter municipality may enact ordinances, for the purpose of executing its municipal functions, which are not inconsistent with Oklahoma constitutional or statutory provisions. 11 O.S. 1991, § 14-101[11-14-101]. Non-charter municipalities have the power to "[m]ake all contracts and do all other acts in relation to the property and affairs of the municipality, necessary to the good government of the municipality, and to the exercise of its corporate and administrative powers." 11 O.S.1991, § 22-101[11-22-101](4). Title 11 of the Oklahoma Statutes, Section 22-101(4) has been characterized as a "fairly broad provision allowing municipalities to do that which is necessary to the good government of the municipality." A.G. Opin. 95-105.
 CONCURRENT JURISDICTION AND PREEMPTION
¶ 5 "Concurrent jurisdiction" occurs when both statute and ordinance permissibly coexist to regulate a particular subject-matter. The Legislature must not have preempted municipalities from regulating the particular subject-matter in order for a municipality to have concurrent jurisdiction over the subject-matter. To determine whether the Legislature intended to provide municipalities with concurrent jurisdiction over persons engaged in boiler and pressure vessel service, repair, and installation, the Boiler and Pressure Vessel Safety Act must be examined to ascertain if it preempts municipalities from concurrently regulating boilers and pressure vessels.
¶ 6 The United States Supreme Court has identified two broad categories of preemption: expressed and implied. See Blue CircleCement v. Board of County Commissioners, 917 F. Supp. 1514,1517-18 (W.D. Okla. 1995) (citing Gade v. National Solid WastesManagement Association, 505 U.S. 88, 98, 112 S. Ct. 2374, 2383,120 L. Ed. 2d 73 (1992)).[2] Courts further distinguish between implied field preemption and implied conflict preemption.97 F. Supp. at 1518. Implied field preemption exists when the regulatory scheme is "so pervasive" that it may be reasonably inferred that the drafters left "no room" for supplementation by another regulatory body. Id. Meanwhile, implied conflict preemption occurs when the full purposes and objectives of the regulatory scheme would be blocked by another set of regulations or when it would be physically impossible to comply with both sets of regulations. Id. If the Oklahoma Legislature has expressly or impliedly preempted the field of boiler and pressure vessel regulation, then municipalities would be prohibited from regulating the same.
¶ 7 First, the Boiler and Pressure Vessel Safety Act must be scrutinized in order to ascertain whether the Legislature expressly intended State law to preempt municipalities from regulating persons engaged in boiler and pressure vessel service, repair, and installation. "[W]here a field of legislation has been reserved to the state," Oklahoma courts have held that, "cities and towns are forbidden to enter except by express permission of the state." 7-Eleven, Incorporated v. McClain,422 P.2d 455, 458 (Okla. 1967) (citing Ex parte Higgs,263 P.2d 752, 756 (Okla.Crim.App. 1953)). If the Boiler and Pressure Vessel Safety Act expressly preempts such regulation, then municipalities will be prohibited from regulating persons engaged in service, repair, and installation of boilers and pressure vessels.
¶ 8 In 7-Eleven, the municipality enacted a zoning ordinance restricting the locations at which 3.2% beer could be sold. In 1967, Oklahoma's non-intoxicating beverage statutes expressly confined municipal regulation of the sale of 3.2% beer to time restrictions and fee impositions. The Oklahoma Supreme Court struck down the ordinance, holding that the Legislature expressly preempted municipalities from regulating 3.2% beer, except to the extent that the ordinance pertained to time restrictions or fee impositions. 422 P.2d at 459. Therefore, the municipality was expressly preempted from enacting the disputed zoning ordinance.
¶ 9 The Boiler and Pressure Vessel Safety Act, 40 O.S. 1991and Supp. 1998, §§ 141.1-141.19, and its corresponding rules, OAC 380:25-1-1 to 380:-25-17-3, regulate persons engaged in the service, repair, or installation of boilers and pressure vessels in the State of Oklahoma. The Boiler and Pressure Vessel Safety Act provides that, "All firms or corporations engaged in the service, repair and/or installations of boilers or pressure vessels located in this state shall be licensed by the Commissioner to perform such work." 40 O.S. 1991, § 141.6[40-141.6](A). Acting under that authority, the Labor Commissioner requires applicants to submit evidence of "past experience within the scope of the license requested, and [to] give evidence of their workmanship and skills which would qualify them for the license requested." OAC 380:25-13-2(a).[3] Welders seeking licensure under the Boiler Pressure Vessel Safety Act must satisfy additional requirements set forth in OAC 380:25-13-3.
¶ 10 The Boiler and Pressure Vessel Safety Act does not contain a statutory provision expressly preempting municipalities from regulating persons engaged in the service, repair, or installation of boilers or pressure vessels. Therefore, municipalities are not expressly preempted from regulating boiler and pressure vessel service, repair, or installation. However, this does not end our scrutiny.
¶ 11 We must next determine whether the Boiler and Pressure Vessel Safety Act impliedly preempts regulation by municipalities. As set forth by the United States Supreme Court in Gade, implied field preemption or implied conflict preemption may exist, resulting in preemption of municipal regulation of boiler and pressure vessel service, repair, or installation. Following a review of the Boiler and Pressure Vessel Safety Act, it does not appear that the Legislature impliedly preempted municipalities from similarly regulating persons engaged in boiler and pressure vessel service, repair, and installation.
¶ 12 First, the Boiler and Pressure Vessel Safety Act provisions pertaining to licensure of persons engaged in such service, repair, and installation, are not so pervasive as to leave no room for supplementation by municipal ordinance. In fact, neither the Boiler and Pressure Vessel Safety Act nor the Rules prescribe any specific qualifications for applicants, other than past work experience, workmanship, and skills. OAC380:25-13-2. The absence of extensive or otherwise detailed qualifications lead to a reasonable inference that "implied field preemption" was not intended with respect to the licensure of persons engaged in boiler and pressure vessel service, repair, and installation.
¶ 13 Second, it is difficult to imagine a municipal ordinance which would prevent the Boiler and Pressure Vessel Safety Act from accomplishing the full purposes and objectives of its licensure provisions or which would make compliance with the State statute physically impossible. (Perhaps a municipal ordinance which restricted licensure to those persons lacking any experience or skills in boiler and pressure vessel safety would be prohibited based on implied conflict preemption.) Otherwise, municipal ordinances would presumably be directed at verifying the qualifications and skills of persons engaged in the service, repair, and installation of boilers and pressure vessels. Therefore, implied conflict preemption is not present, either.
 POLICE POWERS OF MUNICIPALITIES
¶ 14 Even if the Legislature does not preempt the municipality from regulating a particular field, the Legislature must have given the municipality the general power to regulate the particular field. The municipality, as an arm of the State, derives its power from Oklahoma constitutional and statutory provisions. Shipp v. Southeastern Oklahoma IndustriesAuthority, 498 P.2d 1395, 1398 (Okla. 1972). Municipalities may only exercise those powers conferred by these constitutional and statutory provisions. Ex parte Higgs, 263 P.2d 752, 755
(Okla.Crim.App. 1953); City of McAlester v. Grand Union Tea Co.,98 P.2d 924, 925 (Okla. 1940). A municipality may generally exercise "police powers" necessarily essential to its declared purposes, insofar as such purposes are not prohibited by constitutional or statutory provisions. Ex parte Simmons, 115 P. 380, 383
(Okla.Crim.App. 1911). Courts have interpreted Title 11 of the Oklahoma Statutes, Section 22-101(4), enumerated above, as providing municipalities with broad statutory authority "to enact and enforce ordinances to protect the public peace, order, health, morals and safety of its inhabitants." Priddy v. City ofTulsa, 882 P.2d 81, 83 (Okla.Crim.App. 1994); Brannon v. Cityof Tulsa, 932 P.2d 44, 46 (Okla.Ct.App. 1996).
¶ 15 Traditionally, building, mechanical, electrical, and plumbing codes have qualified as matters affecting public health and safety, as enumerated in Attorney General Opinion 91-1. Conclusions respecting the validity of municipal police powers exerted on a particular activity should not be "confined within the narrow circumscription of precedents," but rather such determinations should be made based on present day conditions and activities. Mid-Continent Builders, Inc. v. Midwest City,539 P.2d 1377, 1379 (Okla. 1975) (citing Miller v. Board of PublicWorks, 234 P. 381, 385 (Cal. 1925)). Due to the intrinsic danger associated with converting water to steam under pressurized conditions, boiler and pressure vessel regulation would seemingly fit within the same category of public safety and health matters encompassed by building, mechanical, electric, and plumbing regulation. Therefore, the Legislature has likely given municipalities, through these general police powers provisions, the right to regulate persons engaged in boiler and pressure vessel service, repair and installation.
 CONFLICT OF LAW
¶ 16 Finally, the ordinance must not conflict with State law, particularly in matters of statewide interest. Boiler and pressure vessel service, repair, and installation is a matter of public safety and health because it involves great risk to the building's inhabitants if performed incorrectly. Similar public safety and health matters have been construed to be statewide concerns. A.G. Opin. 91-1. Oklahoma courts have agreed that "conflict between a state enactment and a municipal charter or ordinance may be found to exist when both contain either express or implied conditions that are inconsistent and irreconcilable with one another." Vinson v. Medley, 737 P.2d 932, 936 (Okla. 1987); Moore v. City of Tulsa, 561 P.2d 961, 963 (Okla. 1977). In Vinson, a homeowner sought to invalidate a particular zoning variance granted by the board of adjustment, asserting that the city charter conflicted with State statutes. Specifically, the homeowner argued that unlike general statutory provisions pertaining to municipalities, the applicable city charter provisions did not provide for zoning variations by the board of adjustment. Noting that the city charter did not conflict with State statutes, but rather failed to address the power of the board of adjustment to grant variances, the Oklahoma Supreme Court rejected the homeowner's contention. 737 P.2d at 937.
¶ 17 Therefore, absent an express or implied condition making either provision inconsistent or irreconcilable with one another, courts will not find that a conflict exists between ordinances and statutes. Whether a conflict exists between a particular municipal ordinance and the Boiler and Pressure Vessel Safety Act must be determined on a case-by-case basis.
 MUNICIPAL LICENSING POWER
¶ 18 Assuming statutory authority exists to regulate a particular subject-matter, a municipality may establish licensing requirements as it deems appropriate, pursuant to 11 O.S. 1991,§ 22-107[11-22-107], in exercising its police powers. Priddy v. City ofTulsa, 882 P.2d 81, 83 (Okla.Crim.App. 1994). In Priddy, a municipal ordinance requiring licensure of sign painters was deemed unconstitutional. The Oklahoma Court of Criminal Appeals concluded that, while a municipality has the power to enact licensure requirements to protect the safety of its citizens, issuance of municipal licenses must be related to substantive qualifications, such as competency or proficiency, rather than simply the ability to pay a licensure fee. 882 P.2d at 84.
¶ 19 In the present case, assuming concurrent jurisdiction exists to regulate the same, a municipal ordinance may require persons presently licensed by the Commissioner of Labor to service, repair, or install boilers and pressure vessels, to complete an additional examination and pay an additional fee as long as the municipality's licensure requirements relate to the substantive qualifications of the person, rather than simply the person's ability to pay a licensure fee. Whether the municipality's licensure requirements relate to the person's substantive qualifications is a question of fact which cannot be answered by an Attorney General Opinion. 74 O.S. Supp. 1998, §18b[74-18b](A)(5).
¶ 20 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Legislature does not expressly or impliedly preemptmunicipalities from regulating persons engaged in boiler andpressure vessel service, repair, and installation.
 2. Due to the intrinsic danger associated with convertingwater to steam under pressurized conditions, municipalities havethe power to regulate persons engaged in boiler and pressurevessel service, repair, and installation, pursuant to theirgeneral police powers which permit municipalities to regulatepublic safety and health matters.
 3. Boiler and pressure vessel service, repair, andinstallation is a matter of statewide concern. Accordingly,municipal ordinances cannot conflict with the Boiler and PressureVessel Safety Act. Whether a particular municipal ordinanceconflicts with the Act must be determined on a case-by-casebasis.
 4. A municipal ordinance may require persons or entities tocomplete an additional examination or pay an additional fee,pursuant to 11 O.S. 1991, § 22-107[11-22-107], as long as themunicipality's licensure requirements relate to the substantivequalifications of the person, rather than simply the person's orentity's ability to pay a licensure fee.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JOHN A. MAISCH ASSISTANT ATTORNEY GENERAL
[1] For additional discussion on charter and non-charter municipalities, see Attorney General Opinions 82-50; 84-84; 91-1; 95-105; 96-4; and 96-53.
[2] United States Supreme Court opinions address preemption in terms of federal law preempting state statutes, but for purposes of this Opinion, the same principles are held to apply to State statutes preempting municipal ordinances.
[3] Applicants may also be interviewed by the Chief Boiler Inspector for the Department of Labor. OAC 380:25-13-2(b).