2016 OK 113

**MUSTANG RUN WIND PROJECT, LLC, Plaintiff/Appellee**

v.

**OSAGE COUNTY BOARD OF ADJUSTMENT, Defendant/Appellant,**

v.

**The Osage Nation, Counter–Appellant.**

**Case Number: 113463**

Supreme Court of Oklahoma.

Decided: 11/01/2016

Joel L. Wohlgemuth and Ryan A. Ray, Norman Wohlgemuth Chandler Jeter Barnett & Ray, Tulsa, Oklahoma, for Plaintiff/Appellee Mustang Run Wind Project LLC.

R. Tom Hillis, Assistant District Attorney of Osage County, Pawhuska, Oklahoma, for Defendant/Appellant Osage County Board of Adjustment.

John W. Moody, Tulsa, Oklahoma for Counter Appellant, Osage Nation.

EDMONDSON, J.

¶1 Mustang Run Wind Project, LLC, (Mustang) filed an application with the Osage County Board of Adjustment for a conditional use permit involving between 9,406 and 9,453 acres of land. Mustang proposed to use the land for placing sixty-eight wind turbines on less than 150 acres and generating electricity.[1] Public meetings on the proposed wind energy facility were held in April and May 2014. The proposed facility is close to another "wind farm" which had obtained a permit three years previously. Mustang's application included land zoned for agricultural use and was then being used for agriculture

and ranching. The County Board of Adjustment denied the application.

¶2 Mustang filed an appeal in the District Court for Osage County. The Osage Nation and Osage Minerals Council filed a motion to intervene in the District Court proceeding. The motion to intervene was granted and they filed a trial brief.

¶3 At a trial *de novo* counsel for the parties presented argument and relied upon evidence submitted to the County Board of Adjustment. The trial judge's five-page order found for Mustang and ordered the Board of Adjustment to issue a conditional use permit to Mustang. Osage County Board of Adjustment and Osage Nation filed an appeal to this Court and we retained the appeal.

I.

¶4 Osage Nation argues the Osage County Board of Adjustment "had no power or authority to approve a conditional use permit" because such power was not given by the Legislature to counties. The Osage Nation invokes language of unauthorized legislative power exercised by a county board of adjustment in providing a special use permit and this district court's review of the board's decision on a request for such a permit. Osage Nation identifies five "county zoning and enabling acts" of the Legislature and argues that none of these statutory schemes allows a county board of adjustment to grant a special use permit.[2]

¶5 The Osage Nation's argument centers on both 19 O.S. 2011 865.63 and 866.23. Osage Nation argues 866.23 gives a county board of adjustment "only three powers," to (1) decide an appeal where an error of law has occurred, (2) decide requests for map interpretations or decisions on other special questions, and (3) authorize a variance from zoning that would cause a hardship based upon the shape or topography of property.

1. Judgment or Order of the District Court, Nov. 12, 2014, O.R. 2136–2141, at 2136 "Facts" "B."

2. The five statutes cited and their statutory schemes are: (1) 19 O.S.2011 863.21 (counties containing city of 180,000 population); (2) 19 O.S.2011 865.63 (county planning and zoning); (3) 19 O.S.2011 866.23 (city-county planning and

zoning); (4) 19 O.S.2011 868.18 (counties over 500,000 population); and (5) 19 O.S.2011 869.6 (Lake Area Planning Commission). The parties do not address 19 O.S.2011 864.1–864.16, inclusive, and the Joint City–County Electrical Examining and Appeals Board in counties containing a city of 180,000 or more population.

Appeals to the County Board of Adjustment may be taken by any person aggrieved or by a public officer, department, board or bureau affected by any decision of the County Inspecting Officer in administering the county zoning regulations or building line and setback regulations. Such appeals shall be taken within a period of not more than ten (10) days, by filing written notice with the County Board of Adjustment and the County Inspecting Officer, stating the grounds thereof. An appeal from the County Board of Adjustment shall stay all proceedings in furtherance of the action appealed from unless the officer from whom the appeal is taken shall certify to the Board of Adjustment that by reason of facts stated in the certificate a stay would, in his opinion, cause imminent peril to life or property. The County Board of Adjustment shall have the following powers and it shall be its duty:

1. To hear and decide appeals where it is alleged that there is error of law in any order, requirement, decision or determination made by the County Inspecting Officer in the enforcement of the county zoning regulations.

2. To hear and decide requests for map interpretations or for decisions on other special questions upon which it is authorized to pass by the regulations adopted by the Board.

3. Where, by reason of exceptional narrowness, shallowness, shape, topography or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under this act would result in peculiar and exceptional difficulties to, or exceptional and demonstrable undue hardship upon, the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such demonstrable difficulties or hardships, provided such relief can be granted without substantially impairing the intent, purpose, and integrity of the zone plan or other element of the comprehensive plan as embodied in the zoning regulations and map.

In exercising the above powers, such Board of Adjustment may, in conformity with the provisions of this act, reverse or affirm wholly or partly, or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken.

In acting upon any appeal, such Board of Adjustment shall, in its consideration of and decision thereon, apply the principles, standards and objectives set forth and contained in all applicable regulations, ordinances and resolutions and in the comprehensive plan.

19 O.S.2011 866.23.

Section 866.23 is part of the City–County Planning and Zoning Act, 19 O.S. 2011 866.1–866.35. The language in 865.63 is part of the County Planning and Zoning Act, 19 O.S. 2011 865.51–865.69. The language in 865.63 of the County Planning and Zoning Act is not identical to the language in 866.23 referencing a City–County Planning and Zoning Commission.[3] Because the materials present-

---

3. 19 O.S. 2011 865.63:

Appeals to the county board of adjustment may be taken by any person aggrieved or by a public officer, department, board or bureau affected by any decision of the county inspecting officer in administering the commission's rules and regulations. Such appeals shall be taken within a period of not more than ten (10) days, by filing written notice with the county board of adjustment and the county inspecting officer, stating the grounds thereof. An appeal from the county board of adjustment shall stay all proceedings in furtherance of the action appealed from unless the officer from whom the appeal is taken shall certify to the board of adjustment that by reason of facts stated in the certificate a stay would, in his opinion, cause imminent peril to life or property. The county board of adjustment shall have the following powers and it shall be its duty: To hear and decide appeals where it is alleged that there is error of law in any order, requirement, decision or determination made by the county inspecting officer in the enforcement of the commission's rules and regulations.

In exercising the above powers, such board of adjustment may, in conformity with the provisions of this act, reverse or affirm wholly or partly, or may modify the order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken.

ed in the appellate record appear to show the existence of a cooperative municipal and county planning commission, *i.e.*, "Pawhuska–Osage County Planning Area Commission" which regulates zoning in all of Osage County including incorporated areas, and our conclusion 866.23 provides authority for conditional use permits, we need not examine 865.63.

¶ 6 The Osage Nation points to three statutes relating to municipal boards of adjustment, two allowing "special exceptions"(11 O.S. 44–104 and 44–106) and one a "specific use permit" (11 O.S. 43–113); and argues that "if the Legislature intended for counties to have the power to grant a specific or conditional use permit, it would have amended the City–County Planning and Zoning Act in 2003 when it amended the Oklahoma Municipal Code to grant the power to the governing body of a municipality to approve specific use permits."

¶ 7 The language in 866.23 relied on by the Osage Nation also appears in 19 O.S.2011 863.21. This language has appeared continuously in county zoning statutes since the various forms. of comprehensive county zoning legislation were enacted in 1949.[4] The

In acting upon any appeal, such board of adjustment shall, in its consideration of and decision thereon, apply the principles, standards and objectives set forth and contained in all applicable regulations and plans as adopted.

4. For the similar language occurring in the decennial statutes see 19 O.S.1951 861.19; 19 O.S. 1961 863.21, 865.18, and 866.23. The language occurs in the 1971, 1981, 1991, 2001, and 2011 versions of 19 O.S. 863.21, 866.23.

The cited language in 19 O.S.2011 866.23 is found in 19 O.S.Supp.1949 861.19. Although 861.19 was repealed in 1953 by S.B. No. 353 32, to the extent it was inconsistent with prior statutes, the same language appears in the then new Act at 21. 1953 Okla. Sess. Laws pp. 536, 539. Similarly, the 1951 statute was repealed by H.B. 840, 1955, but with the same language enacted in 21 of that Act. 1955 Okla. Sess. Laws Ch. 19A, 22, 42, pp. 172, 539. The *1955 version of the Act* codified at 19 O.S.Supp.1955 863.1– 863.43, was determined by this Court to be a special and not a general law when parties agreed the Act was for the purpose of applying only to the City of Tulsa and excluding the City of Oklahoma City, and no reasonable explanation was offered for the exclusive application. *Elias v. City of Tulsa*, 1965 OK 164, 408 P.2d 517. The Court did not address the constitutionality of the Act as amended after 1955.

argument of the Osage Nation is each and every county adjustment board does not have, *and has never had*, the authority to grant a special or conditional use permit. In other words, the Osage Nation claims that no owner of real property in Osage County may obtain any type of conditional use permit from a county board of adjustment.

¶ 8 Osage Nation also concludes this lack of authority to issue a conditional use permit by a county board of adjustment also strips such authority from a District Court to approve a conditional use permit in a statutorily authorized review of the board's decision in a District Court trial *de novo*.[5] We disagree.

¶ 9 A zoning variance and a special permit granted by a local government entity are historic procedures designed to (1) act as a safety valve when applying a zoning regulation to "prevent governmental restrictions from operating in such a manner that the burden on an individual landowner amounts to a taking," and (2) adjust application of ordinances impacting upon an owner's proposed use of property unforeseen when ordinances were created.[6] Flexibility in land-use

5. We observed in *Bankoff v. Board of Adjustment of Wagoner County*, 1994 OK 58, 875 P.2d 1138, 1143, that 19 O.S. 866.24 provides in part: "[s]aid cause shall be tried de novo in the District Court and said Court shall have the same power and authority as the County Board of Adjustment, together with all other powers of the District Court in law or in equity." A similar procedure is used for appeals from municipal boards of adjustment. *Vinson v. Medley*, 1987 OK 41, 737 P.2d 932, 938 (in an appeal to a district court from a municipal board of adjustment "There must be a complete examination of all issues, both of fact and law. The cause stands as if it has never been resolved before.").

6. Jonathan E. Cohen, *A Constitutional Safety Valve: The Variance in Zoning and Land–Use Based Environmental Controls*, 22 B.C. Envtl. Aff. L.Rev. 307, 308 (1995) (safety valve for unconstitutional takings); *City of Memphis v. Qualls*, 16 Tenn.App. 387, 64 S.W.2d 548, 549 (1933) (an adjustment board is created to adjust differences between officials and property owners arising from the enforcement of zoning ordinances because it would be difficult to create zoning ordinances to meet every conceivable future need).

The question whether a zoning regulation has "gone too far" as to constitute a taking is decided on "a case by case basis." *In re Petition No.*

regulation has been provided in many states by procedures for granting (1) area variances, a deviation from strict compliance with physical standards such as setbacks, lot size and frontage, (2) use variances, which allow use prohibited by zoning regulations, and (3) special use permits (or conditional use permits) where the use of the property is conditionally allowed by ordinance.[7] Historically, some states distinguished a zoning "board of adjustment" which could grant area/use variances and special permits and a zoning "board of appeal" which typically heard appeals from zoning administrators.[8] Section 866.23 appears to combine the functions of the historic board of appeal which heard appeals from a zoning official and a board of adjustment which adjusted the application of zoning ordinances for a particular situation. It authorizes a board of adjustment: "1. To hear and decide appeals ... [and] 2. To hear and decide requests ... for decisions on other special questions upon which it is authorized to pass by the regulations adopted by the Board."

¶ 10 The Pawhuska–Osage County Planning and Zoning ordinances adopted by the Osage County Board of County Commissioners (1) state they are adopted pursuant to 11 O.S. 101–109 (Chapter 43), & 19 O.S. 866.1–866.36 (Ordinance 1.1), (2) establish areas allowing conditional use permits (Ordinance 1.7.1), (3) create a Board of Adjustment (Or-

dinance 6.1) and (4) authorize the Board of Adjustment to grant conditional use permits (Ordinance 6.5.2). A board of adjustment authorized by Pawhuska–Osage County Planning and Zoning ordinances to hear an application of a special use permit is within the board's statutory authority to hear and decide requests for a decision authorized by 866.23. Boards of adjustment were historically given the power to "adjust" the application of zoning ordinances and the board of adjustment's authority in this case to issue a conditional use permit corresponds to that historic role. Our conclusion is consistent with viewing 866.23 in harmony with common sense, reason, and our State Constitution, and as an effort by our Legislature to provide Oklahoma landowners a procedure seeking approval for uses of their property that would otherwise be disapproved upon application of zoning ordinances.[9]

¶ 11 We reject the claim made by Osage Nation that a property owner in Osage County may not obtain a conditional use permit for proposed uses of his or her property. Because we reject this argument we also reject the claim a District Court lacks authority to review a decision made by a county board of adjustment.

## II.

■ ¶ 12 Osage County Board of Adjustment argues (1) the trial judge failed to

382, 2006 OK 45, 12, 142 P.3d 400, 407. *See, e.g., Koontz v. St. Johns River Water Management Dist.*, —— U.S. ——, 133 S.Ct. 2586, 2595, 186 L.Ed.2d 697 (2013) (when landowner sought permit to build on property the government agency could not condition issuance of permit on landowner's relinquishment of a portion of the property unless there existed a nexus and rough proportionality between the government's demand and the effects of the proposed land use).

7. *Ivancovich v. City of Tucson Board of Adjustment*, 22 Ariz.App. 530, 529 P.2d 242, 248 (Div. 2, 1974) (a use variance is one which permits a use of land other than that allowed by the zoning ordinance, and an area variance involves such matters as setback line, frontage requirements, height limitations, lot size restrictions, density regulations and yard requirements); *Holasek v. Village of Medina*, 303 Minn. 240, 226 N.W.2d 900, 903 (1975) (a variance allows a property owner to use his property in a manner forbidden by an ordinance, while a special-use permit allows him to put his property to a use which the

ordinance expressly permits); Helen M. Maher, *Religious Freedom and Zoning*, 5 Buff. Envtl. L.J. 309, 328–329, (1998) ("special use permits are issued for uses identified in zoning ordinances as appropriate to the district, but which must receive local board approval").

8. *See, e.g.,* Alan R. Madry, *Judging Ziervogel: The Twisted Path of Recent Zoning Variance Decisions in Wisconsin*, 91 Marq. L. Rev. 485, n. 1 (2008) (discussing the difference between boards of adjustment patterned after the 1920s era Standard State Zoning Act proposed by the U.S. Dept. of Commerce, and municipal zoning boards of appeal in Wisconsin).

9. *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 1989 OK 139, 782 P.2d 915, 918 ("We measure legislation not merely against a single constitutional provision. Rather, 'statutes and generally, the constitution must be construed as a consistent whole, in harmony with common sense and reason', with all pertinent portions of the constitution being construed together.").

consider Osage County Zoning Ordinance, Section 6.5.2, which is used by the Board of Adjustment in deciding to grant a conditional use permit; and (2) the factors considered by the Board show a discretion to deny a conditional use permit when the applicant satisfies the minimum requirements for obtaining a permit.

¶ 13 Osage County Board of Adjustment's appellate brief does not refer to the record on appeal for the substance of the ordinance or to any argument relating to judicial notice of a county ordinance. An examination of the trial court record on appeal shows a filing by Mustang which has attached an uncertified and undated photocopy of a document purporting to represent a portion of the Pawhuska Osage County Planning Area: Zoning Ordinance, and containing Section 6.5.2 (8).[10] The Osage Nation's objection before the Board of Adjustment contains material which appears to be uncertified photocopies of certified photocopies of the ordinance.[11] We need not address (1) whether the photocopies of the ordinances were official records in accordance with 12 O.S.2011 2902 & 3005,[12] or (2) issues relating to judicial notice,[13] or (3) the allocation of the burden to present the ordinances in a judicially cognizable form in either this appeal[14] or in a District Court trial *de novo*,[15] because a court may rely upon facts not in dispute which are

**10.** Mustang Wind Run Project, LLC's Response, etc., June 11, 2014, Exhibit A, O.R. Vol. 8, at 1430–1438.

**11.** See notes 16, 33, and 34 *infra*, and discussions relating to uncertified copies and our acceptance of the documents due to the parties' reliance on them in this proceeding.

**12.** 12 O.S. 2011 3005:

The contents of an official record or of a private record authorized to be recorded or filed in the public records and actually recorded or filed, if otherwise admissible, may be proved by a copy in perceivable form, certified as correct in accordance with Section 2902 of this title or testified to be correct by a witness who has compared it with the original. If a copy which complies with this section cannot be obtained by the exercise of reasonable diligence, other evidence of the contents may be admitted.

In *Hishaw v. City of Oklahoma City*, 1991 OK CR 122, 822 P.2d 1139, the Court of Criminal Appeals stated that a municipal ordinance used as the basis for a prosecution must be reflected in the record, either by way of introduction in evidence in the trial court in accordance with 12 O.S. 2902, or set forth verbatim by the court during trial or in its findings or judgment, or the wording of the ordinance must have been agreed to by the parties and the stipulation entered in the record during trial. See Professor Whinery's comment on *Hishaw* in 2 L. Whinery, *Oklahoma Evidence, Commentary on the Law of Evidence*, 23.06 n. 3 (2d ed., 2000): *Revision of Portion of the Rules of the Court of Criminal Appeals*, 2016 OK CR 20(Oct. 5, 2016), Rule 2.2 (Form and Contents of Record), paragraph F (When a City or Municipality is a Party) (When a city or municipality is a party, a certified copy of the specific ordinance(s) involved in the case shall be included in the record. It shall be the responsibility of the city or municipality to ensure the ordinance(s) are included in the record for appellate review.)

**13.** The court may consult and use any source of pertinent information, whether or not furnished by a party when taking judicial notice of law. *Panama Processes, S.A. v. Cities Service Co.*, 1990 OK 66, 796 P.2d 276, 294; 12 O.S.2011 2203 ("The court may consult and use any source of pertinent information, whether or not furnished by a party"). However, municipal ordinances have traditionally not been within the scope of a court's judicial notice in the absence of specific statutes requiring judicial notice in specific circumstances. *Pelican Production Corp. v. Mize*, 1977 OK 235, 573 P.2d 703, 704; 2 L. Whinery, *Oklahoma Evidence, Commentary on the Law of Evidence*, 5.05, 76–78 (2d ed., 2000).

**14.** An appellant has the burden to preserve a trial court record and then create a record on appeal that demonstrates the alleged error in the trial court's decision. *Ray v. Ray*, 2006 OK 30, 12, 136 P.3d 634, 637 ("The appealing party must include in the record for appeal all materials necessary for corrective relief."); *Pracht v. Oklahoma State Bank*, 1979 OK 43, 592 P.2d 976, 978 ("The appellant bears the burden of demonstrating a sufficient record and applicable law to demonstrate in this Court that the trial court committed error since error in the lower court is not presumed.").

**15.** Generally, the burden of proof as to a particular fact rests upon the party asserting that fact, and whether a party has a burden to assert a particular fact often depends upon whether the fact is part of a claim or defense made by the party. *Colton v. Huntleigh USA Corp.*, 2005 OK 46, 10, 121 P.3d 1070, 1073. The trial *de novo* in the District Court was based upon the record before the Board of Adjustment that was filed with the District Court and any non-cumulative additional evidence the parties desired to produce. Generally, burdens of proof are not altered when a trial *de novo* examines the decision of a board of adjustment. *Hargrave v. Tulsa Bd. of Adjustment*, 2002 OK 73, 6, 55 P.3d 1088, 1091,

admitted or stipulated in briefs.[16] Due to all parties' reliance on similar language for 6.5.2 we have addressed this argument by the Board.

¶ 14 The argument is simply: the trial court did not cite to ordinance 6.5.2 in its order, so the trial court must not have considered it when making its decision. Board argues it has authority to consider "the general welfare" of the people of Osage County when making its decision and this was not considered by the trial court. Section 6.5.2 states in part:

... The Board shall make written findings certifying that the application complies with the pertinent individual conditions of use as set forth in Article 3. That any additional conditions of use specified in the granting of the permit are compatible with the general provisions of these regulations, as well as the provisions for the district in which such use is permitted, and that satisfactory provisions and arrangements have been made concerning the following where applicable:

(1) Safety of the motoring public and of pedestrians using the facility and the are immediately surrounding the site.

(2) Safety from fire hazard and measures for fire control.

(3) Protection of adjacent property from flood or water damage.

(4) Noise producing elements and glare of vehicular and stationary lights and effects of such lights on the established character of the neighborhood.

(5) Location, lighting, and types of signs and relation of signs to traffic control and adverse effects on adjacent properties.

(6) Street size and adequacy of pavement width for traffic reasonably expected to be generated by the proposed use around the site and in the immediate neighborhood.

(7) Adequacy of parking as determined by requirements of these regulations for off-street parking facilities in the use district in which the site is located; location of ingress and egress points for parking and off-street loading spaces, and protection of public health by surfacing and all parking areas to control dust.

(8) Such other measures as will secure and protect public health, safety, morals, and general welfare.

During one proceeding the trial judge listed what he understood to be all objections made against Mustang's project, asked counsel if he had missed anything which needed to be added to that list for his review, scheduled trial briefs, and provided an opportunity if counsel wanted to call witnesses presenting new material.[17] The trial judge's order states he "made known to the parties that I was accepting all previous testimony, all pleadings and any other evidence that was presented at the September hearing date from either the parties or any other resident or citizen who wished to do so."[18]

¶ 15 The trial judge's order addressed objections to Mustang's project which related to the project's effect on: (1) mineral interests owned by the Osage Nation, (2) eagles, prairie chickens, and/or birds, (3) the Tallgrass Prairie and/or the views of the area of the Osage Nation Heritage Trail Byway. The judge also reviewed objections concerning decrease in neighboring land values, and presence of towers which "may be blown over, cause fires and/or throw ice off turning blades," and the effect of a project when "there may be Indian burial sites and/or historical artifacts."

(Court noted that a party's burden of proof at the District Court trial de novo did not change from the party's burden of proof before the board of adjustment.). Cf. In re M.K.T., 2016 OK 4, 87, 368 P.3d 771 (when a party is pleading foreign law as a basis for a judicial decision that party "has the burden of going forward with proof of it at the risk of nonpersuasion.").

16. *Booth v. McKnight*, 2003 OK 49, 70 P.3d 855, (uncontroverted facts not appearing in the appellate record but in the parties' briefs may be considered to supplement an incomplete judgment roll); *Board of Ed. of Ind. Sch. D. No. 48, Hughes Cty. v. Rives*, 1974 OK 153, 531 P.2d 335, 336 (Court used in its opinion undisputed facts which were found in the appellate briefs).

17. Tr. Aug. 28, 2014, Vol. II, pp. 42–43, 50, 52–53, 55.

18. Order of the District Court, Nov. 12, 2014, O.R. 2136–2141, at 2137 "Facts" paragraph "H."

¶ 16 The trial judge stated he had reviewed the transcript of the public meetings, and the pleadings and documents in the District Court proceeding. His order states: "That at those meetings the Petitioner [Mustang] presented its application and without question showed it had complied with all requirements for the issuance of a permit."[19]

¶ 17 The trial judge made specific findings of fact concerning objections relating to Mustang's project and the presence of eagles and the greater prairie chicken population. He characterized as "pure speculation" the claim an eagle could fly into a wind turbine blade and die. He noted the absence in the record of any scientific study on the issue, and no agency charged with preservation of eagles had objected to the project. He determined there was no evidence showing an adverse effect upon the prairie chicken population by Mustang's project.

¶ 18 He compared the "small footprint of the turbines" to the footprint of drilling rigs or a tank battery, and questioned the parties' argument concerning the negative impact on viewshed of an area including wind turbines where the Osage Nation "requires so many wells be drilled in this area." He noted this small footprint in an area where oil drilling occurs and denied the objection based upon the viewshed of the Tallgrass Prairie and the Osage Nation Heritage Trail Byway. The trial judge found the allegation of harm to mineral interests to be "without merit."

¶ 19 The trial judge made a finding "There was no evidence that any burial sites and/or Indian artifacts are, were, or ever were in the area covered by the leases" and characterized this argument by the parties as "pure speculation."

¶ 20 The trial judge noted the use of adjoining property for cattle and horses. He determined that "the wind farm would have no effect at all on use of adjoining property" and "any objection as to decreased property values is pure speculation." The trial judge also considered the Osage Nations' argument that the Osage County Board of Adjustment did not have authority to approve or reject Mustang's project. He denied this objection. The trial judge's findings include the following.

> The Court has reviewed the statements of the Board of Adjustment made when they denied the permit as no written findings were made herein. The best the Court can determine is the Board did not think that a wind farm fits within their "vision" for Osage County and/or for adjacent landowners. This Court finds the vision concept to be amorphous, and without a foundation to be relied upon. It appears some members of the Board were more concerned with adjoining landowners than with the rights of the surface owners to use their property in a lawful manner and receive compensation therefore.

The trial judge noted the positive benefit of increased revenue to the Shidler School District from Mustang's project, and he compared the increased revenue Shidler District would receive to the revenue currently received by another school district.[20] He noted "both the Federal government as well as the State of Oklahoma have made energy production thru wind power a priority."[21] The trial judge noted a conditional use permit had been granted for another wind farm in the same area "two to three years earlier [and] it seems inconsistent for one board to say yes and a subsequent board to say no for the same area with no definite reason therefore."[22]

¶ 21 The police power of the state operates when necessary to protect the health, morals, safety, and general welfare of the public.[23] The power to enact and enforce

19. Order of the District Court, Nov. 12, 2014, O.R. 2136–2141, at 2137 "Facts" paragraph "E."

20. In one trial court hearing the trial judge observed "it looks like about every teacher, administrator in the Shidler School District signed one [letters] and sent it in, in favor of this [project]." Tr. Aug. 28, 2014, Vol. II, p. 31.

21. Order of the District Court, Nov. 12, 2014, O.R. 2136–2141, at 2140, citing "17 O.S. 160.12(1)(2)."

22. Order of the District Court, Nov. 12, 2014, O.R. 2136–2141, at 2140.

23. *Indian Territory Illuminating Oil Co. v. Larkins*, 1934 OK 125, 168 Okla. 69, 31 P.2d 608 (Syllabus by the Court).

zoning laws is derived from a governmental entity's police powers.[24] The phrase "general welfare of the public" encompasses more than public health, safety and morals regulations. In the context of land use the phrase includes consideration of such concepts as natural scenic beauty, quiet seclusion for residents of the community, and the economic welfare of the landowners and the community as a whole.[25]

¶ 22 As observed by the U.S. Supreme Court in 1995, "land use restrictions aim to prevent problems caused by the 'pig in the parlor instead of the barnyard.' "[26] Some of the objections raised to Mustang's project treat the wind turbines as the proverbial pig in the parlor with allegations that wind turbines upset the natural scenic beauty and have an adverse impact on wildlife. These are claims based upon the "general welfare" of the community. The Board's trial brief in the District Court argued for the application of Ordinance 6.5.2 by the trial court.[27] The trial judge's order denied these claims based upon the evidence before him. The trial judge considered and adjudicated the "general welfare" objections although he did not expressly cite Ordinance 6.5.2 in the order.

¶ 23 The Board of Adjustment's allegation of error includes the concept that the *form* of the trial court's order is erroneous because no citation of the ordinance appears on the face of the order. Historically, the form of a judgment did not negate it's legal vitality when the court record shows the order was intended to be a judgment, and it could be determined (1) whom the judgment was in favor of, (2) whom against, and (3) what the court ordered or decreed should be done, together with the amount of recovery, if there was a money judgment.[28] While the particular form of a trial court order may be required in certain instances,[29] an appeal from the Board of Adjustment to a District Court pursuant to 19 O.S. 865.64 contains no unique requirements for the form of the judgment rendered by the District Court.[30] We additionally note that proceedings in a District Court on an appeal from a Board of Adjustment in zoning matters are generally characterized as being equitable in nature,[31] and an adjudication in equity values substance over form.[32]

---

24. *In re Initiative Petition No. 382*, 2006 OK 45, 11, 142 P.3d 400, 406.

25. *See, e.g., Ghaster Properties, Inc. v. Preston*, 176 Ohio St. 425, 436, 27 O.O.2d 388, 200 N.E.2d 328 (1964) (discussing scenic beauty and legislation enacted under the police power to regulate or prohibit billboards); *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (acknowledging a village's police power as "ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people"); *Gin S. Chow v. City of Santa Barbara*, 217 Cal. 673, 22 P.2d 5, 16–17 (1933) (Under modern conditions a government entity's lawful exercise of a police power includes the general welfare which embraces regulations to promote the economic welfare, public convenience, and general prosperity of the community.).

26. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 732, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995) quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926).

27. Respondent's [Board of Adjustment's] Trial Brief, Sept. 10, 2014, O.R. at 2084–2088.

28. *Dixon v. Peacock*, 1914 OK 256, 43 Okla. 87, 141 P. 429, 432.

29. *See, e.g.*, 12 O.S. 2011 696.3 (specifying the form for judgments, decrees and appealable orders).

30. 19 O.S. 2011 865.64:

An appeal to the district court from any decision, ruling, judgment, or order of said county board of adjustment may be taken by any person or persons, firm or corporation, jointly or severally, aggrieved thereby, or any department, board or official of government by filing with the clerk of said board within ten (10) days a notice of such appeal. No bond shall be required for such appeal, but costs may be required in the district court as in other cases. Upon filing of such notice, the clerk of said board shall forthwith transmit to the clerk of the district court the originals or certified copies of all papers constituting the record in such case, together with the order, judgment or decisions of said board. Said cause shall be tried de novo in the district court and said court shall have the same power and authority as the county board of adjustment, together with all other powers of the district court in law or in equity. An appeal to the Supreme Court from the decision of the district court shall be allowed as in other cases.

31. *Triangle Fraternity v. City of Norman ex rel. Board of Adjustment*, 2002 OK 80, 11, 63 P.3d 1, 5.

¶ 24 Osage County Board of Adjustment cites no authority or public policy for requiring a trial court to cite an ordinance when the trial court record clearly shows the ordinance was before the trial court to consider and the court's adjudication included a party's objections based upon applying the ordinance. We decline to elevate form over substance and this assignment of error is without merit.

¶ 25 The Board makes a similar argument and argues in its appellate brief the order of the trial court does not "specifically cite" an Osage County Wind Ordinance. Again, appellant's argument is that the ordinance is not cited, and thus must not have been applied and this failure necessarily shows trial court error. Appellant does not cite the appellate record where this ordinance occurs or the effect of the ordinance's application to this controversy. Mustang's trial court brief discusses the Wind Energy Ordinance and has attached thereto an uncertified photocopy of material purporting to be the Wind Energy Ordinance which corresponds to statements made by the Osage Nation.[33] The Osage Nation also presented uncertified photocopies of the ordinances to the trial court. We construe the statements by the parties in their appellate briefs and submissions in the trial court as recognizing the substance of the Wind Energy Ordinance as that appended to Mustang's trial court brief and Osage Nation's objection before the Board of Adjustment.[34]

¶ 26 Mustang's brief argues the ordinance provides "land in Osage County may be utilized for construction of wind farms, and "the Board of Adjustment has authority to grant conditional use permits for wind energy projects."[35] The purpose of the Osage County Wind Energy Ordinance "is to establish minimum requirements and regulations for the placement, construction, and modification of Wind Energy Facilities...."[36] The ordinance includes various requirements such as (1) minimum distances of turbines from residences, public roads, and storage buildings, (2) blade height, (3) color of the turbines, (4) lighting, (5) signage, (6) access to the turbines themselves as well as locked gated roads, (7) soil erosion, (8) system maintenance, (9) and a required agreement with the Osage County Commission for maintenance and repair of roads due to additional wear caused by the construction and maintenance of a wind energy facility.

¶ 27 Mustang's trial brief argues that the Board of Adjustment recognized Mustang had satisfied federal and state requirements as well as requirements of the applicable ordinances. The brief then quotes the chairman of the Board of Adjustment and a statement for the denial of Mustang's application: "We're really here to look at from our vision, is this appropriate for adjacent landowners and is it appropriate for the county." The brief argues that the Board of County Commissioners and Zoning Board had already determined a wind farm was appropriate in Osage County, and the Board of Adjustment was failing to properly apply both Ordinance 6.5.2 and the Wind Energy Ordinance.

¶ 28 The Board of Adjustment's trial brief argues it possesses the discretion to deny an application for a conditional use permit for a wind farm when an applicant has satisfied the Wind Energy Ordinance. It asserts that its authority to consider the "general welfare" of the citizens is sufficiently broad to give it discretion to deny the permit. Osage Nation argues the Board's denial of the application was correct, there is a presumption

**32.** *Sinclair Oil & Gas Co. v. Bishop*, 1967 OK 167, 441 P.2d 436, 447–448; *Robbins v. Warren*, 1924 OK 1020, 104 Okla. 255, 230 P. 929.

**33.** The Osage Nation's objection filed with the Board of Adjustment has attached thereto uncertified photocopies of pages that *appear* to have been certified photocopies of both the Pawhuska Osage County Planning Area zoning ordinances and the Osage County Wind Ordinance. Petition by Osage Nation Objecting to Mustang Run Wind Project, April 10, 2014, Osage County Board of Adjustment, O.R. 1172–1294, 1296–1299. This material was part of the record before the trial court.

**34.** *Booth v. McKnight, supra*, at note 16.

**35.** Mustang's trial brief, August 27, 2014, O.R. Vol. 9, at 1630–1876, at 1634.

**36.** Mustang's trial brief, August 27, 2014, O.R. Vol. 9, at 1630–1876, at 1653–1655.

in favor of the Board's decision, Mustang failed to satisfy its burden before the trial court, and the trial court's decision is not supported by evidence or law. Similarly, Osage Nation argued in its trial brief the zoning ordinance gives discretion to the Board when approving a conditional use permit, and states this discretion is exercised to "secure and protect public health, safety, morals, and general welfare" and assure "protection of adjacent properties and the public interest."[37]

¶ 29 A board of adjustment's decision to deny a conditional use permit is subject to judicial *de novo* review in a District Court: "Said cause shall be tried de novo in the District Court and said Court shall have the same power and authority as the County Board of Adjustment, together with all other powers of the District Court in law or in equity."[38] If the Board of Adjustment had discretion to deny any and all applicants for a conditional use permit based solely upon the particular Board's "vision" of a "general welfare" of the citizens, a type of unfettered discretion without any articulated standard, as implied by the Board; then the trial court

would be possessed of the same discretion on an appeal of the board's decision: "said Court shall have the same power and authority as the County Board of Adjustment." We reject the Board's view and the implied conclusion that the District Court would have such unfettered discretion.

¶ 30 We have stated "A governmental entity may broadly use its power to regulate land use unless the regulation does not have a substantial relationship to the public health, safety, morals, or general welfare or is an unreasonable and arbitrary exercise of its police power."[39] The exercise of governmental zoning power must not be arbitrary or unreasonable.[40] A board of adjustment deciding an application for a variance or a conditional use does not exercise a legislative power in changing a zoning ordinance, but exercises a quasi-judicial power based upon the facts presented to the board.[41] One consequence of these principles is that when a board of adjustment, a governmental agency, seeks to balance competing interests of a property owner and the public the board's discretion must be based upon the evidence before it and fixed principles.[42]

37. Osage Nation Trial Brief, September 10, 2014, O.R. at 2098–2101, 2101.

38. 19 O.S.2011 866.24:

An appeal to the District Court from any decision, ruling, judgment, or order of said County Board of Adjustment may be taken by any person or persons, firm or corporation, jointly or severally, aggrieved thereby, or any department, board or official of government by filing with the clerk of said Board within ten (10) days a notice of such appeal. No bond shall be required for such appeal, but costs may be required in the District Court as in other cases. Upon filing of such notice, the clerk of said Board shall forthwith transmit to the clerk of the District Court the originals or certified copies of all papers constituting the record in such case, together with the order, judgment or decisions of said Board. Said cause shall be tried de novo in the District Court and said Court shall have the same power and authority as the County Board of Adjustment, together with all other powers of the District Court in law or in equity. An appeal to the Supreme Court from the decision of the District Court shall be allowed as in other cases.

39. *In re Initiative Petition No. 382*, 2006 OK 45, 11, n. 19, 142 P.3d at 406, citing *Nucholls v. Board of Adjustment of the City of Tulsa*, 1977 OK 3, 11, 560 P.2d 556.

40. *McConnell v. Town Clerk of Tipton*, 1985 OK 61, 704 P.2d 479, 481, citing *Keaton v. Oklahoma City*, 1940 OK 215, 187 Okla. 593, 102 P.2d 938 ("Municipalities are authorized to enact zoning ordinances and when the legislative branch of the municipal government has acted in a particular case, its expressed judgment on the subject will not be overridden by the judiciary unless such judgment is unreasonable, arbitrary or constitutes an unequal exercise of police power."); *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 548–549, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), (Kennedy, J., Concurring, "This separate writing is to note that today's decision does not foreclose the possibility that a regulation might be so arbitrary or irrational as to violate due process.").

41. *Banks v. City of Bethany*, 1975 OK 128, 541 P.2d 178, 180 (principle applied to a municipal board of adjustment).

42. *Christian v. Gray*, 2003 OK 10, 45, 65 P.3d 591, 609 (the discretion possessed by a trial judge does not mean the decision of the trial judge is one without fixed principles by which its correctness may be determined upon appellate review). Cf. *Maree v. Neuwirth*, 2016 OK 62, 6, 374 P.3d 750, 752–753 (an abuse of discretion or arbitrary exercise of judicial *or quasi-judicial power* may occur "even though the. officer is vested with judgment and discretion," and such

¶ 31 A board of adjustment hearing a request *for a variance* presupposes the reasonableness of zoning regulations as a whole, and relaxes the general rules of the ordinance to alleviate conditions peculiar to particular property.[43] A conditional use is a use *allowed by an ordinance* and the ordinance is presupposed to be reasonable. Upon an application for a special or conditional use permit the question *usually* turns on: (1) whether the conditions specified by the ordinance have been fulfilled by the applicant for the special use permit, and (2) whether additional conditions specified by the board have been fulfilled when the board is vested with authority to create additional conditions upon an applicant when seeking a specific use permit. A special or conditional use permit "is one issued for a use which the ordinance expressly permits in a designated zone upon proof that certain facts and conditions detailed in the ordinance exist."[44] If an applicant complied with the ordinance-specified conditions for a conditional use permit, then the question becomes whether the board of adjustment was possessed of discretionary authority to create additional conditions, and if imposed, whether they were reasonable.

¶ 32 The record before the trial court included a transcript of the board's meeting when the vote was taken to disapprove the conditional use permit. Three members voted to disapprove, one abstained, and the chairman did not vote. Comments were made by the chairman and a board member. One comment was "we're really here to look at from our vision, is this appropriate for adjacent landowners and is it appropriate for the county." This comment was followed by some general comments by the chairman concerning his uncertainty about the exact economic benefits the county would receive from Mustang's proposed project.[45] The trial judge had before him the complete record from the Board of Adjustment.

¶ 33 When the Osage County Board of Adjustment approves a conditional use permit it "shall make written findings certifying that the application complies with the pertinent individual conditions of use as set forth in Article 3 [of the Ordinances]."[46] This ordinance also states as follows.

> The Board shall consider the application and site plan and shall grant or deny the application. In granting an application, the Board shall impose such requirements and conditions, in addition to those expressly stipulated in these regulations for the particular use, as the Board may deem necessary for the protection of adjacent properties and the public interest.

This ordinance states the Board may "deny the application" and both Osage Nation and the Board of Adjustment argue this power to deny the application is a power to deny a conditional use permit even when an applicant has satisfied the requirements of all relevant ordinances. None of the appellants has pointed to any statutory authority that a board of adjustment possesses *legislative* power to rewrite a zoning ordinance approved by its board of county commissioners. A board of adjustment does not possess "unconfined and unrestrained freedom of action" to "depart from a comprehensive plan."[47] We

arbitrary exercise of power is subject to correction when properly presented to the Court).

**43.** *Nucholls v. Board of Adjustment of the City of Tulsa*, 1977 OK 3, 560 P.2d 556, 559–560.

**44.** *Harts Book Stores, Inc. v. City of Raleigh*, 53 N.C.App. 753, 281 S.E.2d 761, 763–764 (1981) (rule stated and also holding that when an applicant for a special use permit satisfies a zoning ordinance's conditions for granting it, the permit is the applicant's by right and may not be withheld because zoning authorities feel it might be detrimental to a neighborhood or because neighbors oppose it); *Brooks v. Fisher*, 705 S.W.2d 135, 137–38 (Tenn.Ct.App.1985) (stating that neighborhood opposition cannot prevail against a land use permitted of right); *Bartheld v. County of Koochiching*, 716 N.W.2d 406, 411 (Ct.App.

Minn. 2006) ("A county's denial of a conditional use permit is arbitrary where the applicant establishes that all of the standards specified by the zoning ordinance as conditions of granting the permit have been met.").

**45.** Pawhuska–Osage County Board of Adjustment, Public Hearing, May 8, 2014, O.R. 2031, 2046.

**46.** Ordinance 6.5.2, Power of the Board to Grant Conditional Use Permits, O.R. at 1259.

**47.** *Bankoff v. Board of Adjustment of Wagoner County*, 1994 OK 58, 875 P.2d 1138, 1144–1145, quoting *Van Meter v. H.F. Wilcox Oil & Gas Co.*, 1935 OK 188, 170 Okla. 604, 41 P.2d 904, 909.

do not view this authority to deny an application as power to determine whether a permitted special use is a use beneficial to the community; that decision has been made by a county zoning ordinance allowing the operation of the wind turbines as part of its plan. We view the power to deny an application consistently with the authority of a board of adjustment to hear facts concerning special or conditional use permits. It is the operation of wind turbines in this specific proposed project that is at issue for this permit and not the use of wind turbines in the county.

¶ 34 Consistent to some extent with this view, Osage Nation and the Board of Adjustment also argue Mustang failed to present facts showing that public health, safety, morals, and general welfare of adjacent landowners in particular would not be harmed if the project was approved. Statements from adjacent landowners stated they would be harmed from the project, but the trial judge found the nature of this alleged harm to be speculative.

¶ 35 The trial judge determined Mustang's application for a conditional use satisfied the applicable ordinances. The trial judge determined the objections were not based upon credible evidence and some of them lacked a quality of reasonableness. That record is before us in the present appeal. We must agree with the trial court's factual findings if they are supported by the evidence before the trial judge.[48]

¶ 36 The trial court agreed that the Board of Adjustment possessed discretion to impose reasonable conditions in addition to those created by the relevant ordinances. The trial judge ordered the Board of Adjustment to issue a conditional use permit to Mustang "with such additional reasonable conditions as can be shown with a basis therefore." More than twenty years ago we noted a trial

judge's fairness in granting a board a second opportunity to decide under what conditions a permit would be granted, rather than just ordering the permit issued as the judge was authorized to do.[49] The same may be stated in this case.

¶ 37 The effect of the trial judge's ruling is that when a zoning ordinance allows a property owner to use his or her property in a manner desired by the owner upon a showing that such use will be in accordance with reasonable conditions, then the objections to such use must also be founded upon reason and evidence. Zoning laws, including both the granting and denial of special use permits, may not be imposed in an arbitrary and capricious manner. Property rights and the use of property are fundamental rights on which this country was established, and it is a board of adjustment's duty to determine the reasonableness of a property owner's request based upon the evidence before the board.[50] The trial judge noted the absence of written findings by the board setting forth its reasons for denying the permit. The trial judge applied zoning ordinances and made an assessment of the reasonableness of the application as well as the objections to the proposed project. The trial judge had the entire record before him and his findings are not against the clear weight of the evidence. The trial court's judgment is affirmed.

## CONCLUSION

¶ 38 The Osage County Board of Adjustment possesses authority to grant conditional use permits. The trial judge's findings are not against the clear weight of the evidence. The trial court's judgment requiring the Board of Adjustment to issue a conditional use permit with any additional reasonable conditions is affirmed.

48. *Triangle Fraternity v. City of Norman ex rel. Norman Bd. of Adjustment*, 2002 OK 80, 11, 63 P.3d 1, 5. *See also Vinson v. Medley*, 1987 OK 41, 737 P.2d 932, 938 (in an appeal from a municipal board of adjustment, unless clearly contrary to the weight of the evidence, the district court's decree will not be disturbed); *Robison v. Graham*, 1990 OK 93, 799 P.2d 610, 618 ("Our standard of review in an equitable action is that '[o]rdinarily this court must affirm the judgment

of the trial court sitting in equity unless it is found to be against the clear weight of the evidence.' ").

49. *Bankoff v. Board of Adjustment of Wagoner County*, 1994 OK 58, 875 P.2d at 1145.

50. *Nucholls v. Board of Adjustment of the City of Tulsa*, 1977 OK 3, 560 P.2d 556, 559–560.

¶ 39 COMBS, V.C.J.; and KAUGER, WATT, WINCHESTER, EDMONDSON, TAYLOR, COLBERT, and GURICH, JJ., concur.

¶ 40 REIF, C.J., not participating.